4 A.3d 991

**STATE of Maryland**

v.

**Brian Gerard KANAVY, Shadi Sabbagh, Dennis Harding, Mark Richard Sainato, and Jason Willie Robinson.**

No. 129, Sept. Term, 2009.

Court of Appeals of Maryland.

Sept. 21, 2010.

2

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Jason W. Shoemaker (Shoemaker & Conner, Bethesda, MD), on the brief, for respondents.

Joshua R. Treem (Nicholas J. Vitek of Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, MD), on the brief, for respondents.

4

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

MURPHY, J.

In the Circuit Court for Carroll County, a Grand Jury returned five identical indictments that charged Brian Gerard Kanavy, Shadi Sabbagh, Dennis Harding, Mark Richard Sainato, and Jason Willie Robinson (Respondents) with the offense of reckless endangerment. Each indictment contained the following assertion:

**STATE OF MARYLAND, CARROLL COUNTY, TO WIT:**

The Grand Jurors of the State of Maryland, for the body of Carroll County, do on their oaths and affirmations present that [the Respondent] late of said County, on or about January 23, 2007 at 999 Crouse Mill Road, Keymar, Carroll County, Maryland, did recklessly engage in conduct, **to wit: did fail to contact emergency services (9–1–1) in a timely manner that created a substantial risk of death and serious physical injury to Isaiah Simmons, III, while in Defendant's care and custody and a duty to do so existed,** in violation of the Criminal Law Article, Section 3–204, A–1, contrary to the form of the act of the assembly in such case made and provided and against the peace, government and dignity of the state.

(Emphasis supplied).

Respondents filed motions to dismiss the indictments on the ground that the reckless endangerment statute does not proscribe the *failure* to act. The Circuit Court entered an "ORDER" dismissing the indictments "pursuant to Md. Rule 4–252 for failure to charge the Defendants with a crime," and the Court of Special Appeals affirmed that decision in an unreported opinion. *State v. Kanavy, et al.,* Nos. 3008–3012, September Term, 2007, filed August 10, 2009. The State then filed a Petition for Writ of Certiorari, in which it presented this Court with three questions:

1. Where the indictments contained all the elements required to charge reckless endangerment, did the lower courts err in focusing on surplus language regarding the manner and means by which defendants committed the crime to find that the indictments failed to charge an offense?

2. Alternatively, if it was appropriate to consider the manner and means alleged in the indictments in determining their sufficiency, does the "conduct" required for reckless endangerment include acts of omission where there is a duty to act?

3. Did the trial court err in going beyond the four corners of the indictments to find a basis for dismissal, contrary to the Court of Appeals decision in *State v. Taylor*, 371 Md. 617[, 810 A.2d 964] (2002)?

We granted the petition. 411 Md. 599, 984 A.2d 243 (2009). For the reasons that follow, we shall reverse the judgment of the Court of Special Appeals and direct that the cases be remanded to the Circuit Court.

## Background

On January 23, 2007, Isaiah Simmons, III, a juvenile who had been committed to the Department of Juvenile Services, died at the Bowling Brook Preparatory School in Carroll County. Respondents are employees of that juvenile facility who were on duty when the juvenile died. The record shows that, at the conclusion of a Grand Jury investigation, the State's Attorney for Carroll County requested that the Grand Jury return a three count indictment against each Respondent. "Count 1" would have charged each Respondent with manslaughter as a result of the deadly force he allegedly used against the deceased; while "Count 2" would have charged each Respondent with the lesser-included offense of reckless endangerment as a result of the deadly force he allegedly used. The Grand Jury, however, elected to charge each Respondent only with "Count 3," the indictment quoted above.

6

The Circuit Court's Order was accompanied by a "MEMO-RANDUM OPINION" that included the following findings and conclusions:

The State contends that the statutory definition of conduct includes an omission, which would violate a specific duty owned by the Defendants to Isaiah Simmons.

Maryland appellate courts have considered numerous cases concerning reckless endangerment.

\* \* \*

The general patterns of these cases consistently show convictions for reckless endangerment stemming from direct actions taken by the Defendants. This court is unable to find a single case in which a Defendant was convicted of reckless endangerment based on the omission of a duty.

\* \* \*

The State argues that the *Craig* case serves as the basis in holding that criminal liability can be assessed against a Defendant for the omission of a duty. In *Craig,* the Defendants were convicted of the involuntary manslaughter of their infant child for failing to obtain proper medical care for their child because of their personally held religious beliefs. *Craig v. State,* 220 Md. 590, 593, 155 A.2d 684, 686 (1959). The State contends that since the crime of reckless endangerment has been held to constitute a lesser form of gross involuntary manslaughter, that omitted actions which serve as a basis to charge a Defendant with the crime of involuntary manslaughter must also be applicable to charge the Defendants with reckless endangerment. This court disagrees. In *Craig,* the State was able to prove that under Article 72A, Section 1 of the old Maryland code, that a statutory duty existed for a parent to care for a child, and therefore "inaction" in failing to obtain medical treatment for a child who eventually dies would leave the parents liable for manslaughter. *Id.* at 596–97[, 155 A.2d at 687–688]. Here, this court finds no case in which any court in Maryland has even construed the definition of "conduct"

under the reckless endangerment statute to include an omission.

Assuming for purposes of this argument however, that the Court found that a person may be found guilty of reckless endangerment for failing to perform a legal duty, the court would still need to find evidence that such a duty legally exists. At common law there is no legal duty to assist a person in distress. *See Pope v. State,* 284 Md. 309, 324–25, 396 A.2d 1054, 1064 (1979). Statutes have affirmatively imposed criminal liability for the failure to act on a duty. . . . **Here, the State would not need to prove at this stage of the proceedings that the Defendants failed to perform a legal duty. The State would only need to show some authority for the proposition that a duty exists, the violation of which renders the Defendants guilty of reckless endangerment. But, this court finds no such evidence that any statutory duty exists in this case.**

\* \* \*

In this case, the sole count is based upon an alleged omission of failing to call emergency services in a timely manner rather than the actual commission of any act by the Defendants. Therefore this court finds that the indictment fails to adequately allege or charge the Defendants with a crime, and accordingly dismissal of the indictment is warranted under Md. Rule 4–252.

(Emphasis supplied).

While affirming the decision of the Circuit Court, the Court of Special Appeals stated:

There is no doubt that the Grand Jury's indictments would have been sufficient to allege the commission of a crime if the Grand Jurors had simply followed the formula set forth in section 3–206(d). As can be seen, the indictments set forth each defendant's name, the date of the act, the county, and alleged that the defendant "did recklessly engage in conduct" in violation of section 3–204(a)(1) of the Criminal Law Article. The problem arises because the

indictments went on to describe how the State contended that the reckless endangerment statute was violated, i.e., by describing the defendants' passive conduct (failure to call 911 in a timely manner where a duty to make the call existed).

Because the State elected to describe the conduct alleged to be wrongful, the defendants were presented with an opportunity to raise the issue of whether the indictments, as worded, charged them with a crime.

\* \* \*

We agree with the State that there are circumstances (e.g., where the defendant engages in an act of commission) where reckless endangerment has been held to be a lesser included offense of negligent manslaughter. *See State v. Albrecht, supra,* 336 Md. [475] at 477–78[, 649 A.2d 336, 337 (1994) ]. (proof that shotgun was recklessly held by police officer when it accidently discharged and killed a citizen was sufficient to prove the crime of reckless endangerment and negligent manslaughter). But no case cited by the State stands for the proposition that the statutory crime of reckless endangerment is a lesser included offense to manslaughter in situations where the defendants are accused of passive conduct.

*State v. Kanavy, et al.,* Nos. 3008–3012, September Term, 2007, slip opinion, pp. 2–3, 6–7.

## Discussion

### I.

### Respondents' Duty to the Deceased

It is clear that, while the deceased was confined at the Bowling Brook facility, the United States Constitution imposed a duty to provide him with medical care. The due process clause of the Fourteenth Amendment requires the State to provide medical care to injured persons who are in the custody of State agents. *Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244–45, 103 S.Ct. 2979, 2983–2984, 77 L.Ed.2d 605 (1983); *Buffington v. Baltimore County,* 913 F.2d

113, 119 (4th Cir.1990). As the United States Supreme Court stated in *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989):

> When the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the *Eighth Amendment* and the Due Process Clause.

*Id.* at 200, 109 S.Ct. at 1005–06.

It is also clear that the laws of Maryland imposed a duty to provide the deceased with appropriate medical care. The Courts and Judicial Proceedings Article (CJ) and the Human Services Article (HS) impose on the Department of Juvenile Services the duty to provide a child in the Department's custody with appropriate medical care. The purposes of the Juvenile Causes Subtitle include the purpose of providing children in State care and custody with a safe, humane, and caring environment, as well as access to required services. *See* CJ § 3–8A–02(a)(7). HS § 9–223 requires that the Department comply with the provisions of CJ § 3–8A–02. HS § 9–237 requires that the Department provide children in its custody with a safe and humane environment. As employees of the Department, Respondents had a legal duty to comply with the applicable laws.

## II.

### "Conduct" Includes "Omissions"

In *Williams v. State*, 100 Md.App. 468, 641 A.2d 990 (1994), while holding that a reckless endangerment conviction merged into an assault conviction, the Court of Special Appeals stated:

> A reckless endangerment resulting in death will constitute either a grossly negligent involuntary manslaughter or a depraved-heart second-degree murder. In either event,

the reckless endangerment will merge into the greater inclusive criminal homicide.

*Id.* at 485, 641 A.2d at 998. We agree with this statement. In *Criminal Homicide Law,* Judge Moylan states:

> With gross negligence manslaughter . . . , the act of killing may be by omission as surely as by commission. *See* § 1.9 *supra.* A finding of guilt is subject to the general limitation that for a homicide by omission to be criminal, the homicidal agent must have owed a duty to the homicide victim, such as the duty owed to a patient by a doctor or nurse; to a child by a parent, guardian, teacher or baby-sitter; to a person placed in a position of danger by the person creating such danger. In *State v. Albrecht* [, 336 Md. 475, 499, 649 A.2d 336, 347 (1994),] Judge Raker defined the gross negligence variety of involuntary manslaughter in terms that included both the modality of commission and that of omission.
>
> > In Maryland, involuntary manslaughter is a common law felony, generally defined as an unintentional killing done without malice, in negligently doing some act lawful in itself or *by the negligent omission to perform a legal duty.*
>
> (Emphasis supplied [in treatise] ).
>
> *Craig v. State* [, 220 Md. 590, 155 A.2d 684 (1959) ] and *Palmer v. State* [, 223 Md. 341, 164 A.2d 467 (1960) ] were cases in which the defendants were [convicted of] gross negligence manslaughter for the acts of omission that led to the deaths of their children.

Judge Charles E. Moylan, Jr., *Criminal Homicide Law,* § 12.9, pp. 235–236 (2002).

■ According to Respondents, reckless endangerment is a lesser-included offense of gross-negligence manslaughter only if the reckless conduct is "active" rather than "passive," because a reckless endangerment conviction requires proof beyond a reasonable doubt that the defendant did *engage in conduct* that created a substantial risk of death or serious physical injury to another.[1] We conclude, however, that the

---

1. Md.Code Ann. (2002), Crim. Law Art., § 3–204, in pertinent part, provides:

conduct proscribed by the reckless endangerment statute includes the wilful failure to perform a legal duty. This conclusion is consistent with the following authorities.

The word "conduct" is defined by Black's Law Dictionary as "personal behavior, whether by action or inaction; the manner in which a person behaves." Black's Law Dictionary 292 (7th ed.1999). The entry continues with a case quotation which states, "The word 'conduct'... covers both acts and omissions." *Id.* (alteration in original, citation omitted). Our reckless endangerment statute is derived from the Model Penal Code, in which the term "conduct" is defined as "an action or omission and its accompanying state of mind, or where relevant, a series of acts and omissions[.]" Model Penal Code, § 1.13(5) (1985). New York's reckless endangerment statute provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." McKinney's Penal Law (N.Y.) § 120 (2009). In *People v. Sanford,* 24 A.D.3d 572, 808 N.Y.S.2d 274 (2005), *cert. denied,* 6 N.Y.3d 852, 816 N.Y.S.2d 758, 849 N.E.2d 981 (2006), the Appellate Division of the Supreme Court of New York reversed the dismissal of a multi-count indictment that included (first degree and second degree) reckless endangerment counts based upon "the defendant's knowledge of her mother's age and health, the seriousness of the fall as shown by her mother's injuries and subsequent death, and the defendant's failure to have rendered or summoned aid for approximately five hours, although she was a geriatric nurse[.]" *Id.* at 275. According to the appellate court, the State's evidence "if unexplained and uncontradicted at trial, would support a jury verdict that the defendant recklessly or with criminal negligence caused the death of or injuries to her mother, or recklessly created a substantial risk or serious injury to her mother." *Id.*

---

(a) *Prohibited.*—A person may not recklessly;
 (1) engage in conduct that creates a substantial risk of death or serious physical injury to another[.]

Section 163.195 of the Oregon Revised Statutes, in pertinent part, provides that "(1) A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." In *State v. Nelson*, 224 Or.App. 398, 198 P.3d 439 (2008), while reversing a reckless endangerment conviction on the ground that the State's evidence was insufficient to establish an essential element of the offense, the Court of Appeals of Oregon stated:

> Thus, to obtain a conviction under the reckless endangerment statute, the state generally has to prove, first, that the defendant performed an act, or omitted to perform an act as required by law. ORS 161.085(3), (4); second, that the act or omission created a substantial risk of serious physical injury to another person; third, that the act or omission presented such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act; fourth, that the defendant was aware of the risk; and fifth, that the defendant consciously chose to disregard the risk.
>
> Here, we agree with the state (and defendant concedes) that allowing a two-and-one-half-year-old child to wander unattended in a commercial and residential neighborhood for six hours put the child at substantial risk of sustaining serious physical injury. We also agree that doing so is a gross deviation from a reasonable standard of care.

*Id.* at 442.

To convict a Respondent of the reckless endangerment offense charged in the indictment,[2] the State must prove beyond a reasonable doubt that (1) the Respondent owed a duty to obtain emergency medical care for the deceased, (2)

---

2. Obviously, no Respondent can be convicted of reckless endangerment based upon the force used against the deceased. Evidence of the injuries sustained by the deceased will be admissible, however, for the limited purpose of establishing the Respondents' awareness of the duty to obtain emergency services for the deceased.

the Respondent was aware of his obligation to perform that duty, (3) the Respondent knew that his failure to perform that duty would create a substantial risk of death or serious physical injury to the deceased, (4) under the circumstances, a reasonable employee of the Department of Juvenile Services in Respondent's position would not have disregarded his or her duty to (in the words of the indictments) "contact emergency services (9-1-1) in a timely manner," and (5) the Respondent consciously disregarded his duty. The wording of the indictments at issue is legally sufficient to charge the offense of reckless endangerment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS THAT THE CASE AGAINST EACH RESPONDENT BE REMANDED TO THE CIRCUIT COURT FOR TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**

BELL, C.J., dissents.

BELL, C.J., dissenting.

At issue in this case is the sufficiency of the indictments, filed against the petitioners Brian Gerard Kanavy, Shadi Sabbagh, Dennis Harding, Mark Richard Sainato and Jason Willie Robinson, employees of the juvenile facility at which a detainee of that facility, the victim in this case, died, to charge the crime of reckless endangerment. On motion of the petitioners, the Circuit Court for Carroll County ruled that the indictments were insufficient, as to each, "the sole count [being] based upon an alleged omission of failing to call emergency services in a timely manner rather than the actual commission of any act by the Defendants."

The Court of Special Appeals affirmed. Although it recognized, therefore agreeing with the State, that reckless endangerment may be a lesser included offense of negligent manslaughter and thus presumably, in that circumstance, would support an indictment so charging, it was not persuaded that

it could sustain an indictment where the only conduct charged was passive conduct. Indeed, the intermediate appellate court pointed out that "no case cited by the State stands for the proposition that the statutory crime of reckless endangerment is a lesser included offense to manslaughter in situations where the defendants are accused of passive conduct."

I believe the Circuit Court and the Court of Special Appeals got it right. Accordingly, for the reasons they expressed, I dissent.