Submitted May 27, conviction for unauthorized use of a vehicle reversed; remanded for resentencing; otherwise affirmed July 23, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JERROL EDWIN SHIPE,
*Defendant-Appellant.*

Washington County Circuit Court
C120721CR; A152549

332 P3d 334

Peter Gartlan, Chief Defender, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Mooney, Judge pro tempore.

HADLOCK, J.

**HADLOCK, J.**

Charges were filed against defendant after a police officer found him sitting in a stolen truck that contained, among other things, baggies with drug residue. Defendant's case was tried to the court, which convicted defendant of unauthorized use of a vehicle (UUV), ORS 164.135,[1] and unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant challenges only the UUV conviction, arguing that the trial court erred when it denied his motion for judgment of acquittal on that charge. According to defendant, the state failed to prove that he "knowingly" used the truck without the owner's consent, as charged in the information. We agree and, therefore, reverse the UUV conviction.

When reviewing an order denying a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found that the essential elements of the crime were proven beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). We present the facts consistently with that standard.

On March 27, 2012, a pickup truck was reported missing by its owner. Defendant was incarcerated at the time. Six days later, Officer Neumeister, responding to a call in the parking lot of an apartment complex, found defendant sitting in the driver's seat of the stolen truck, with the engine running and the lights on, listening to music and "moving his head back and forth, and kind of making loud * * * high pitched squealing noises." Defendant told Neumeister that he lived at the apartment complex and had driven the truck there approximately 15 minutes earlier. Neumeister arrested and searched defendant, finding baggies imprinted with an "iron cross" logo and containing methamphetamine.

---

[1] ORS 164.135 provides, in part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without the consent of the owner[.]"

The state charged defendant with four crimes, including UUV and unlawful possession of methamphetamine.[2] Regarding the UUV charge, the information alleged that defendant "did unlawfully and knowingly take, operate, exercise control over, ride in and otherwise use" the truck "without the consent of the owner."

The case was tried to the court. Neumeister testified that, when he had asked defendant about the truck, defendant said that he had gotten it from "a friend named Richey," who lived near a school in Tualatin. Neumeister also testified that he assumed there were keys in the ignition, but he "did not necessarily see the keys in the ignition." In the cab of the truck, officers found various items, including baggies with drug residue that were imprinted with the same "iron cross" logo as those found on defendant, clothing, bolt cutters, keys, documents with other people's names on them, and a locked case that had the words "crime committing kit" painted on it. Police later discovered that much of the property found in the truck had been stolen.

The truck's owner testified that, when the truck was returned to him, it contained several items that did not belong to him, including blankets, iPods, remnants of game systems, and a laptop. All of the owner's property that had been in the truck was missing, including his registration and insurance card, and there was considerable damage to the exterior and interior of the truck. The ignition was in working order, but the key that defendant had used to operate the truck did not belong to the owner. The owner had not made a copy of his key, nor had he given anyone his key.

Defendant's girlfriend, Bouferrache, lived in the apartment complex where defendant was arrested. She testified that, around the time of defendant's arrest, her son, Smith, would visit her in a "big truck" that he had had for approximately two months. Bouferrache knew that Smith previously had been convicted of unauthorized use of a vehicle, relating to the theft of a car; however, Smith had told her—in front of defendant—that the truck he was using at

---

[2] The trial court found defendant not guilty of the two other charged counts: possession of a stolen motor vehicle and theft.

that time was a "work truck" that he had received from a friend who had recently given him a job.

Surveillance video taken by the apartment complex showed a silver truck arriving at and leaving the parking lot several times on March 30, three days before defendant's arrest. The video showed a driver getting out of the truck on at least two occasions that day and entering Bouferrache's apartment. The resident manager of the apartment complex recognized the driver as someone who was staying with Bouferrache at the time, but it was not defendant or Smith. When asked whether the driver's name could have been Rich Wright, the apartment manager stated that she thought that that was the driver's name.

During his closing argument, defendant argued that no evidence showed that he had known that the vehicle was stolen when he used it. The trial court disagreed. The court found that defendant was trying to cover for Smith when he said that he had gotten the truck from "Richey." The court continued, "why would you try to cover for somebody else? Well, it's because you have knowledge that he [Smith] doesn't have authority for the vehicle." The court was also persuaded by the evidence that the baggies found on defendant's person were similar to baggies found in the truck, along with the bolt cutters, "crime committing kit," and documents belonging to other people. According to the court,

"all of this tells somebody * * * you're on notice that wrapped in all of this information, all this theft information is that this car is containing stolen information.

"You couple that with the fact that he knows his girlfriend's son, and if it was, in fact, his girlfriend's son stole and gave him the car, and knows that he has been convicted of unlawful use, and knows that there might be something odd here * * *.

"All that coupled together is, he knew that something was going on with this vehicle, and absolutely knew that it was not authorized for Mr. Smith to have that vehicle, and Mr. Smith, therefore, could not * * * clear his conscience for it. He operated the vehicle knowing that he didn't have permission of the owner."

On appeal, defendant argues that the trial court erred when it denied his motion for judgment of acquittal. *See State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003) (explaining that, in a bench trial, when a defendant argues during closing argument that the state failed to adduce sufficient evidence for conviction, that argument is "the equivalent of a motion for judgment of acquittal"). Defendant does not dispute that he drove the truck without the owner's consent; however, he argues that the state failed to prove that he "knowingly" operated the vehicle without the owner's consent, as charged in the information—that is, that he actually knew that the truck was stolen. *See State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) (when an indictment alleged that the defendant committed UUV "knowingly," "the state was required to prove that defendant *actually knew* that the car was stolen" (emphasis in original)); *see also State v. Lasky*, 259 Or App 307, 317, 314 P3d 304 (2013) (citing that passage from *Bell* as authority for the proposition that "the state must prove that the defendant knew that he did not have the owner's consent to use the vehicle").

Thus, we must determine whether, viewing the evidence in the light most favorable to the state, a rational factfinder could have found that the state proved beyond a reasonable doubt that defendant knew the truck was stolen. *Cervantes*, 319 Or at 125. The state may prove a defendant's knowledge with circumstantial evidence and reasonable inferences flowing from that evidence. *Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002). However, "evidence is insufficient if it requires the stacking of inferences to the point of speculation." *State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004).

Our opinions in other UUV cases are instructive. In *Bell*, the defendant was convicted of UUV and possession of a stolen vehicle, ORS 819.300, after he was stopped while driving a stolen car. 220 Or App at 268. During a bench trial, the officer testified that the defendant had told him that he rented the car from a stranger for $50. *Id*. The defendant had not explained how or when the vehicle was to be returned to its owner, but the officer had not asked defendant

about those matters. *Id.* On appeal, we stated that "[t]he state cannot prove its case by relying on inferences to be drawn from an absence of evidence that it failed to establish at trial." *Id.* at 272. Because the record included no other evidence relevant to the defendant's knowledge, we concluded that the evidence was not sufficient to prove, beyond a reasonable doubt, that the defendant "actually knew" that the vehicle was stolen. *Id.*

In determining that the evidence in *Bell* was insufficient to support an inference that the defendant knew that the car he was driving was stolen, we discussed two other UUV cases in which we also found the evidence insufficient to establish the requisite *mens rea*:

"In *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 44, 920 P2d 1103 (1996), we determined that the evidence did not support an inference that the passenger, who allegedly committed conduct constituting unauthorized use of a vehicle, knew that the vehicle was stolen. In that case, the vehicle's locks were punched and the ignition area damaged, the driver drove in a suspicious manner, and the passenger lied to police about being in the vehicle. *Id.* at 42, 43. However, there was no evidence that the passenger actually perceived any damage to the vehicle. *Id.* at 43-44. We held that the evidence was not sufficient to establish that the passenger knew that the vehicle was stolen. *Id.* at 44.

"In *State v. Shuneson*, 132 Or App 283, 287, 888 P2d 90 (1995), another unauthorized use of a vehicle case, we similarly concluded that the state had not proved that the defendant actually knew that the vehicle in which she was riding was stolen. In that case, the driver operated the vehicle recklessly as he and the defendant fled the scene of a robbery, and they abandoned the vehicle in an attempt to elude the police, including an officer who had discharged his weapon. *Id.* at 285. We determined that the evidence did not support a reasonable inference that the defendant knew that the vehicle was stolen. *Id.* at 287."

*Bell*, 220 Or App at 270-71.

Thus, in *Bell*, *Wright*, and *Shuneson*, we essentially concluded that too great an inferential leap was required to cross the gap between the evidence in the record and a finding that the defendant knew that the car that he or she

was using had been stolen. For the reasons set forth below, we reach a similar conclusion in this case.

Here, the evidence, viewed in the light most favorable to the state, is that defendant drove a stolen truck containing stolen property, bolt cutters, and a "crime committing kit." Also found within the truck were blankets, clothing, and baggies of methamphetamine matching those found on defendant. The owner's registration and insurance card were missing. The interior and exterior of the truck had "considerable" damage, and the key that defendant used to operate the truck did not belong to the truck's owner. Defendant told Neumeister that he had gotten the truck from someone named "Richey," but he had actually gotten the truck from Smith, who had stolen at least one vehicle before.

According to the state, that evidence supports a reasonable inference that "defendant had started the vehicle with an improper key and had the opportunity to observe the vehicle's damaged condition, and as a result, knew the vehicle was stolen." We are uncertain what the state means by an "improper" key. Although the key that defendant used did not belong to the truck's owner, the record includes no evidence that the key looked suspicious or that defendant knew that the key did not belong to anybody who was authorized to use the truck. Similarly, even assuming that it is reasonable to infer that defendant observed the vehicle's damaged condition, the record includes no evidence regarding the extent of that damage or whether the damage would have suggested that the truck had been stolen. Specifically, the record includes no evidence about whether the windows, locks, ignition, or wiring had been damaged or tampered with at all, much less in a way that would have been noticed by anybody using the truck. *Compare State ex rel Juv. Dept. v. Hal*, 168 Or App 76, 78-79, 7 P3d 535 (2000) (driver of a stolen vehicle "at least had reason to believe" that the vehicle was stolen, in part because the interior had been stripped and wires hung from where the stereo had been), *with State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 43, 920 P2d 1103 (1996) (evidence of damage to door locks and ignition was not sufficient to prove "knowledge" element of UUV charge

when there was no evidence that the damage was obvious or that the passenger had noticed it) *and State v. Shuneson*, 132 Or App 283, 286, 888 P2d 90 (1995) (noting that "[t]here was nothing unusual about the appearance of the vehicle, such as hot wires, that would have indicated to [the] defendant that it was stolen").[3]

The state also argues that "there were other common indicators of a stolen vehicle within the [truck]," such as the absence of the owner's registration and insurance card, the stolen property, and the "crime committing kit." But the record includes no evidence that defendant was aware of the missing registration and insurance card. As to the stolen property found within the truck, it may well be that a factfinder could infer that defendant knew that *that property* was stolen, particularly given the presence of bolt-cutters and the "crime committing kit." But the state has not explained why the presence of stolen property within the truck would have indicated to defendant that *the truck itself* was stolen. *See Shuneson*, 132 Or App at 287 (evidence that a vehicle was driven recklessly and abandoned while the driver and passenger fled the scene of a robbery was insufficient to prove passenger's knowledge that the vehicle was stolen). Again, the state urges us to accept too great an inferential leap.

We also observe that the trial court based its ruling in part on its determination that defendant had lied to Neumeister about who had given him the truck. The court inferred from that lie that defendant was trying to cover for Smith because he knew that Smith did not have authority to use the vehicle. We conclude that the evidence of defendant's lie is insufficient to support a finding that defendant knew that the truck was stolen because it "requires the stacking of inferences to the point of speculation." *Bivins*, 191 Or App at 468. Although it may be reasonable to infer that defendant lied to protect Smith in relation to *some* wrongdoing, it does not follow, as a matter of logical probability,

---

[3] The truck's owner testified only generally that there was "considerable damage" to the truck's interior and exterior; he did not specify the type of damage that was done. And although the record includes exhibits that are photographs of the truck, those pictures do not show any type of damage that would suggest to a reasonable factfinder that the truck had been stolen.

that defendant lied because he knew that Smith had stolen *the truck*, particularly given the presence of apparently stolen documents, drug residue, and a "crime committing kit" inside the truck. *See State v. Smith*, 261 Or App 665, 674, 322 P3d 1129 (2014) ("A reasonable inference from the historical facts in evidence may permissibly be drawn if there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact." (Brackets and internal quotation marks omitted.)).

In sum, the record does not include evidence legally sufficient to support a determination that defendant actually knew that the truck he was using was stolen, even when that evidence is viewed as a whole and in the light most favorable to the state. The trial court erred in denying defendant's motion for judgment of acquittal on UUV.

Conviction for unauthorized use of a vehicle reversed; remanded for resentencing; otherwise affirmed.