Argued and submitted November 10, 2014, reversed as to Counts 1 and 2; remanded for resentencing; otherwise affirmed February 19, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RANDY WILLIAM KORTH,
*Defendant-Appellant.*

Multnomah County Circuit Court
121134898; A153685

344 P3d 491

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

This case involves "jiggle keys"[1] and a stolen truck. After being pulled over in a stolen pickup truck, defendant was arrested and charged with unauthorized use of a vehicle (UUV), ORS 164.135[2] (Count 1), possession of a stolen vehicle (PSV), ORS 819.300[3] (Count 2), and possession of methamphetamine, ORS 475.894 (Count 3). The trial court found defendant guilty of all three charges and, because Count 2 merged with Count 1, defendant was convicted of Count 1, UUV, and Count 3, possession of methamphetamine. On appeal, defendant raises two issues relating to the UUV and PSV charges.[4] First, defendant assigns error to the trial court's denial of his motion for judgment of acquittal on both charges, arguing that there was insufficient evidence to prove that he knew that the truck was stolen. Second, defendant assigns error to the trial court's imposition of restitution in the amount of $1,800 for damage to the truck's hood.

We conclude that the state failed to present sufficient evidence that defendant knew that the truck was stolen, and therefore the trial court erred in denying defendant's motion for judgment of acquittal on both the UUV and PSV charges. Accordingly, we do not reach the issue of whether restitution was warranted, and we reverse the judgment of the trial court as to Counts 1 and 2, remand for resentencing, and otherwise affirm.

When reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable

---

[1] According to the arresting officer in this case, "jiggle keys" are "regular old keys that [people] use to steal Honda Accords and Toyota Camrys, because those are easy to steal with any old key" or "other keys that sometimes the car thieves will file down *** because if they file [a key] down a certain way, they're able to stick it into the ignition and just jiggle it around and start cars."

[2] ORS 164.135(1)(a) provides that "[a] person commits the crime of unauthorized use of a vehicle when *** [t]he person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]"

[3] ORS 819.300(1) provides that "[a] person commits the offense of possession of a stolen vehicle if the person possesses any vehicle which the person knows or has reason to believe has been stolen."

[4] Defendant does not challenge his conviction for possession of methamphetamine.

to the state to determine whether a rational factfinder could have found that the essential elements of the crime were proven beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

During a residential burglary in Salem, the keys to the victim's Chevrolet Silverado pickup truck, along with the truck itself and other property, were stolen. According to the victim, a family member named Randy was arrested for the burglary and theft of the truck. Approximately 10 days after the burglary, defendant, whom the victim did not know, was seen driving the truck in Multnomah County. Police Officer Dick stopped and arrested defendant. When Dick asked defendant who the truck belonged to, defendant stated that he "got it from a guy named Dave," a "friend of a friend" whom he had met "about a week and a half to two weeks" prior. He stated that, as far as he knew, the truck belonged to Dave, and Dave had been driving the truck "as long as he had known him." Defendant did not know Dave's last name, his telephone number, or where he lived, except that he was "pretty transient," and defendant thought that Dave was "pretty much" living in another truck of his and "kind of going between two trailers in a trailer park" on Nile Street, in Salem. Dick asked defendant whether he thought it was "odd" that Dave was transient, and living in his truck, while the truck that defendant was driving when he was stopped was "pretty nice." Defendant responded that he "had heard that Dave was going through a divorce, and his wife was pretty much taking him for everything [he was] worth," and that was why he was living in his truck.

Defendant told Dick that he had borrowed the truck from Dave in Salem the previous night, so that he could help a woman in Portland buy an all-terrain vehicle (ATV). He stated that he had arranged to go to Portland, get a trailer from the woman, and then meet the seller of the ATV in Longview. He stated that he had met the ATV seller in Longview at "sometime around" 2:00 a.m. or 3:30 a.m. that morning, returned to Portland with the ATV, and dropped the trailer and ATV back off at the woman's house before being stopped by Dick. Defendant told Dick that he was supposed to return the truck to Dave later that day.

Another officer, Edwards, arrived and assisted Dick by taking an inventory of the contents of the truck. During that process, Edwards removed the keys from the ignition—which were "valid" keys for the truck—and used them to unlock the door to the canopy that covered the bed of the truck. When he opened the door, he found, "right inside the door," a "couple huge sets" of "jiggle keys." As explained above, "jiggle keys" are "regular old keys that [people] use to steal Honda Accords and Toyota Camrys, because those are easy to steal with any old key" or "other keys that sometimes the car thieves will file down * * * because if they file [a key] down a certain way, they're able to stick it into the ignition and just jiggle it around and start cars." The keys found in the truck included different car keys, home keys, and safe keys. Two bags were found behind the "jiggle keys." The bags contained, among other things, drug paraphernalia and paperwork with defendant's name on it.

Initially, defendant denied that any of the property in the back of the truck was his and stated that he had not been in the back of the truck because Dave had told him not to go there. After Edwards showed him the paperwork that he had found, defendant admitted to lying about being in the back of the truck. He admitted that the bags belonged to him but again denied that the "jiggle keys" were his.

Dick did not recall any damage to the truck, and she testified that there was nothing about the truck that, physically, would have indicated that the truck was stolen, such as a "punched" ignition, "[hot]wiring" of the truck, or signs of forced entry. When the victim received her truck back, she found a dent in the hood that had not previously been there. The dent cost $1,800 to repair.

As relevant to this appeal, defendant was charged with UUV and PSV. The indictment alleged that defendant "did unlawfully and knowingly operate and exercise control over" the truck "without the consent of the owner" (Count 1, UUV) and that he "did unlawfully and knowingly possess a stolen vehicle" (Count 2, PSV). The case was tried to the court. After the state presented its case, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that defendant knew that the truck was

stolen. Defendant compared the circumstances in this case to *State v. Bell*, 220 Or App 266, 185 P3d 541 (2008), a case in which we found that the evidence was insufficient to support an inference that the defendant had known that the car that he had been driving was stolen. Defendant argued that he, like the defendant in *Bell*, had "proper keys" and was using a vehicle that showed no signs of vandalism or of being "hot-wired." *See Bell*, 220 Or App at 268. According to defendant, although he, like the defendant in *Bell*, had a plan to return the truck that the officers found suspicious, the state could not prove the element of knowledge through an inference based on an absence of evidence. In response, the state argued that defendant's lie to the police about whether he had been in the back of the truck "destroy[ed] any sort of credibility he had in the story that he provided," suggesting that he made the story up to "cover his tracks." The trial court denied defendant's motion for judgment of acquittal and subsequently found defendant guilty of all counts. When announcing its verdict for Counts 1 and 2, the trial court acknowledged that "it's a close question," and explained that, "the key to this, in my view, is the proximity of the jiggle keys next to the bag with [defendant's] name in it that he lied about."

Defendant now appeals, assigning error to the trial court's denial of his motion for judgment of acquittal on both counts. *See* ORS 136.445 (a court shall grant a motion for a judgment of acquittal "if the evidence introduced theretofore is such as would not support a verdict against the defendant"). He argues that the state failed to prove UUV and PSV, because the evidence did not establish a shared element of those crimes, as charged in the indictment—that defendant actually knew that the truck that he was driving was stolen. *See Bell*, 220 Or App at 269 (because the indictment for UUV and PSV alleged that defendant had acted "knowingly," "the state was required to prove that defendant *actually knew* that the car was stolen" (emphasis in original)). In response, the state contends that, based on defendant's statements to the officers—including a "vague and unconvincing" description of who owned the truck and an "implausible" explanation of how he came into possession of the truck—a rational factfinder could have concluded that

defendant was covering up his knowledge that the truck was stolen. The state also contends that, because the "jiggle keys" were in plain view, next to defendant's bag in the back of the truck, a rational factfinder could have concluded that defendant had seen the keys, and that the keys were "a clear signal to him" that the truck was stolen.

Thus, we must determine whether, viewing the evidence in the light most favorable to the state, a rational factfinder could have found that the state proved beyond a reasonable doubt that defendant knew the truck was stolen. *Cervantes*, 319 Or at 125. The state may prove a defendant's knowledge with circumstantial evidence and reasonable inferences flowing from that evidence. *See Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002) (an element of a criminal offense may be established by "circumstantial evidence and reasonable inferences arising from such evidence"). However, an inferred fact "must be one that a rational factfinder can be convinced follows beyond a reasonable doubt from the underlying facts." *Bell*, 220 Or App at 270. Evidence is "insufficient to support an inference when the conclusion to be drawn from it requires 'too great an inferential leap'—that is, when the logic is too strained," or when it "requires the stacking of inferences to the point of speculation." *State v. Bivins*, 191 Or App 460, 466-68, 83 P3d 379 (2004). Whether the evidence supports a particular inference is a question of law. *Delgado*, 334 Or at 135.

Our opinions in other UUV and PSV cases are instructive. In *Bell*, the defendant was convicted of UUV and PSV after he was stopped while driving a car that had been reported stolen. 220 Or App at 268. During a bench trial, the officer testified that the defendant had told him that he had rented the car from a stranger for $50, but the defendant had not explained how or when the vehicle was to be returned to its owner, and the officer had not asked defendant about those matters. *Id.* The defendant had the proper keys for the car, and the car itself had not been "hot-wired," showed no signs of vandalism, and had Oregon license plates. *Id.* On appeal, the state contended that the evidence that the defendant had no way to recontact the stranger, no deadline to return the vehicle, and no location

to deposit the vehicle "lead to reasonable inferences that [the] defendant both knew the car was stolen and knew that he did not have permission from the owner to operate the car." *Id.* at 271. We noted that, even "[a]ssuming for the sake of argument that such evidence would permit the inference that the state suggest[ed]," there was no evidence in the record one way or the other about whether the defendant had a way to recontact the person who rented the car to him. *Id.* at 271. We also noted that there was "no evidence about whether [the] defendant had a deadline to return the car" or "whether [the] defendant was told where to return the car." *Id.* at 271-72. We stated that "[t]he state cannot prove its case by relying on inferences to be drawn from an absence of evidence that it failed to establish at trial." *Id.* at 272. Because the record included no other evidence relevant to the defendant's knowledge, we concluded that the evidence was "simply insufficient to permit a finding beyond a reasonable doubt that [the] defendant *actually knew* that the car was stolen and that he did not have the consent of the owner to drive it." *Id.* (emphasis in original).

Similarly, in *State v. Shipe*, 264 Or App 391, 392-94, 332 P3d 334 (2014), the defendant was convicted of UUV after he was found sitting in the driver's seat of a stolen pickup truck in the parking lot of an apartment complex. In that case, the evidence, viewed in the light most favorable to the state, was that the defendant drove a stolen truck containing various items of stolen property, bolt cutters, a locked case labeled "crime committing kit," blankets, clothing, and baggies of methamphetamine matching baggies found on the defendant. *Id.* at 397. The truck owner's registration and insurance card were missing, the interior and exterior of the truck had "considerable" damage, and the key that the defendant used to operate the truck did not belong to the truck's owner. *Id.* The defendant told the arresting officer that he had gotten the truck from someone named "Richey," but he had actually gotten the truck from someone named "Smith," who had stolen at least one vehicle before. *Id.*

On appeal, we concluded that the record did not include evidence legally sufficient to support a determination that the defendant "actually knew that the truck he was using was stolen." *Id.* at 399. We noted that, although

the key did not belong to the truck's owner, there was "no evidence that the key looked suspicious or that [the] defendant knew that the key did not belong to anybody who was authorized to use the truck." *Id.* at 397. We also noted that there was no evidence regarding the extent of damage to the truck, or whether that damage "would have suggested that the truck had been stolen" (for example, damage to the windows, locks, ignition, or wiring). *Id.* at 397-98 (comparing *State ex rel Juv. Dept. v. Hal*, 168 Or App 76, 78-79, 7 P3d 535 (2000) (driver of a stolen vehicle "at least had reason to believe" that the vehicle was stolen, in part because the interior had been stripped and wires hung from where the stereo had been), with *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 43, 920 P2d 1103 (1996) (evidence of damage to door locks and ignition was not sufficient to prove "knowledge" element of UUV charge against a passenger when there was no evidence that the damage was obvious or that the passenger had noticed it) and *State v. Shuneson*, 132 Or App 283, 286, 888 P2d 90 (1995) (noting that "[t]here was nothing unusual about the appearance of the vehicle, such as hot wires, that would have indicated to [the] defendant that it was stolen")). We also stated that, although the stolen property, bolt cutters, and "crime committing kit" in the truck may have supported an inference that the defendant knew that *that* property was stolen, the state had failed to explain how "the presence of stolen property within the truck would have indicated to [the] defendant that *the truck itself* was stolen." *Id.* at 398 (emphasis in original). Finally, regarding the defendant's lie to the officer about who had given him the truck, we stated that,

> "[a]lthough it may be reasonable to infer that [the] defendant lied to protect Smith in relation to *some* wrongdoing, it does not follow, as a matter of logical probability, that [the] defendant lied because he knew that Smith had stolen *the truck*, particularly given the presence of apparently stolen documents, drug residue, and a 'crime committing kit' inside the truck."

*Id.* at 398-99 (emphasis in original).

In this case, the evidence, viewed in the light most favorable to the state, is that defendant was stopped while driving a stolen truck in Portland, and he told officers a

detailed, "implausible" story about borrowing the truck from "Dave," a "pretty transient" "friend of a friend" in Salem whom the defendant had met only "about a week and a half to two weeks" prior to his arrest. Defendant said that he had borrowed the truck to help a woman in Portland purchase an ATV, and that he planned to return the truck later that day, but he did not know "Dave's" last name, address, or telephone number. Defendant lied to the officers about having been in the back of the truck, where the "jiggle keys" were found, in plain sight, next to belongings that defendant later admitted were his. Defendant used a valid key to operate the truck. When the truck was returned to the owner, the only damage that she reported was a dent in the truck's hood.

We note that defendant's "implausible" story about borrowing the truck from "Dave" is not, by itself, sufficient to support a reasonable inference that defendant actually knew that the truck was stolen. *See Shipe*, 264 Or App at 398-99 (the defendant's lie about who had given him the stolen truck was insufficient to support a reasonable inference that the defendant knew that the truck was stolen). Similarly, evidence that defendant lied to cover up "*some* wrongdoing" is not, by itself, sufficient to support a reasonable inference that he knew that the truck was stolen. *Id.* (emphasis in original). Therefore, the question in this case is whether a factfinder could reasonably infer from the presence of the "jiggle keys" next to defendant's belongings in the back of the truck—*in addition to* defendant's implausible story about borrowing the truck from "Dave" and his lies about being in the back of the truck and owning any of the property in the back of the truck—that defendant knew that the truck was stolen.

We conclude that, although a factfinder may reasonably infer, from the evidence presented, that defendant had knowledge of "*some* wrongdoing, it does not follow, as a matter of logical probability," that defendant knew that the truck was stolen. *Id.* (emphasis in original). Arguably, a factfinder may reasonably infer, from the proximity of the "jiggle keys" to defendant's bags, defendant's lie about being in the back of the truck, and defendant's implausible story about borrowing the truck from "Dave," that defendant had

seen the "jiggle keys" and was trying to hide his knowledge of them from the officers because he knew that the person he had gotten the truck from was involved in the theft of vehicles. But the state has failed to explain how the presence of the "jiggle keys" within the truck would have indicated to defendant that *this* truck was stolen. Defendant operated the truck itself with a valid key, and not the "jiggle keys" found in the back of the truck, and there was no other evidence that the appearance of the truck, or the way that defendant operated the truck, would have indicated that the truck had been stolen (such as evidence of damage to the truck's locks, windows, or ignition). Thus, based on the evidence presented at trial, an inference that defendant actually knew that the truck was stolen is not "one that a rational factfinder can be convinced follows beyond a reasonable doubt from the underlying facts." *Bell*, 220 Or App at 270. In other words, the evidence in this case "requires the stacking of inferences to the point of speculation," *Bivins*, 191 Or App at 468, and is therefore insufficient to prove, beyond a reasonable doubt, that defendant knew that the truck was stolen.

Because the state failed to present sufficient evidence that defendant knew that the truck was stolen, the trial court erred in denying defendant's motion for judgment of acquittal for both UUV and PSV. Accordingly, we do not reach the issue of whether restitution was appropriate.

Reversed as to Counts 1 and 2; remanded for resentencing; otherwise affirmed.