Submitted May 29, 2020, reversed and remanded July 21, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HILARY PAIGE WITT,
*Defendant-Appellant.*

Washington County Circuit Court
18CR18939; A168873

493 P3d 543

In this criminal appeal, defendant contests her conviction of unauthorized use of a vehicle (UUV). Among other assignments of error, defendant contends that the trial court erred by denying her motion for judgment of acquittal and by receiving a nonunanimous verdict. *Held*: Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence in the record to conclude that defendant knowingly operated another's vehicle. In this case, the dubious circumstances surrounding defendant's acquisition of the car, use of "shaved" keys to operate the car, and testimony from the car's true owner provided enough evidence of UUV to send the case to the jury. However, it was plainly erroneous to enter judgment on the nonunanimous jury verdict.

Reversed and remanded.

Ricardo J. Menchaca, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for the unlawful use of a vehicle (UUV). *See* ORS 164.135(1)(a) (defining that offense). She raises primarily two issues on appeal. She argues that the trial court should have granted her motion for a judgment of acquittal because no reasonable juror could find that she knowingly was driving a stolen car. Alternatively, she argues that the judgment should be reversed because a nonunanimous jury found her guilty. We agree with defendant's second argument but not her first. We accordingly reverse the trial court's judgment and remand this case for further proceedings.[1]

On January 12, 2018, the owner of a 1993 Subaru Impreza reported that his car had been stolen in Southeast Portland. Approximately three months later, on March 9, Officer Welch noticed an older model Subaru at a gas station in Tigard. Although Welch was not aware of the reported theft, the Subaru caught his eye because older models of that car have a basic ignition system, which makes them a target for thieves. As Welch explained, a thief can use a "shaved key, a key that's been filed or shaved down," to open an older model Subaru and start it. Welch entered the car's license plate on a computer in his patrol car, which showed that the Subaru had been reported as stolen.

No one was in the Subaru when Welch first saw it. Shortly afterwards, he saw defendant come out of the gas station, get into the Subaru, and begin driving towards the north entrance of the gas station where Welch's car was parked. Defendant "came up right behind [Welch] at the entrance where [his car] was at, and almost immediately put her car in reverse and actually drove to the other entrance," even though Welch's car was not blocking her exit. Welch followed defendant's car until backup arrived and then stopped her. He testified that, although stopping a person in a suspected stolen car can entail a higher risk

---

[1] If we agreed with defendant's first argument, she would be entitled to an acquittal, not a reversal and a remand with the possibility of a retrial. We accordingly address both issues. Because defendant challenges the ruling on her motion for judgment of acquittal, we state the facts in the light most favorable to the state.

than a normal traffic stop, defendant did not resist when Welch stopped and later questioned her.

Welch told defendant that the car she was driving had been reported as stolen. Defendant responded that she had bought the car a few weeks earlier after seeing it for sale on Craigslist. She gave Welch a generic description of the seller (older white male) and told him that she had paid $550 for it. She could not remember, however, the seller's name, phone number, email, or how to get in touch with him, nor could she remember where the sale had taken place. When asked, she did not produce "any registration, title, or any other documents that would show ownership." She said that she had a bill of sale either in her glove box or in her apartment. However, when Welch checked the glove box, he did not find a bill of sale or "any documents showing that she was supposed to be in possession of the car."

Welch noticed that "there was a lot of property in the vehicle"—"clothes, hygiene items, and stuff that was leaking, and food." He also found two keys. The head of the first key had a rubber or plastic cover that "looked like it had been melted or like scratched down, and you couldn't see a logo on either side of it." The blade of that key had been shaved and had "obvious tool marks all along" it. As Welch explained, "it's a lot thinner. It's completely uneven in some places." The notches and ridges normally found on the blade of a key had been shaved away, and what remained of the blade was "so thin that [Welch] was actually concerned that if [he] messed with it too much [he] might break it."

Welch found a second key in a cup holder between the driver's seat and the front passenger's seat. The head of that key also had a rubber or plastic cover, which was not damaged. Welch testified that "it had a Saturn logo on it. I think it actually said Saturn on it." The blade of that key also had been shaved down but was not as thin as the first one. When asked about the two keys, defendant told Welch that they came with the car. She said that she used the first key, the one with the defaced logo and the "very thin" blade to operate the car. When asked whether she thought that the keys looked "normal," defendant replied that she thought they were worn down because of age. Welch testified, "I

remember specifically telling her that's not really how this is."[2]

Welch agreed on cross-examination that the Subaru did not have other indicia of theft, such as damage to the steering column or broken windows. He testified on redirect, however, that, when a person has a shaved key for that model year Subaru, there is no need to "damage the locks or the ignition or the steering column to operate the vehicle or access it." A shaved key is enough to "unlock the door and start the ignition."

Defendant testified at trial and reiterated that she did not know the car was stolen. During her testimony, she introduced a document captioned "Bill of Sale," which was handwritten on a lined piece of notebook paper. The document is dated March 1, 2018, and identifies the actual owner of the Subaru but describes him as "deceased." The person listed as the seller had the same last name as the owner and purported to transfer "all rights, title, and interest" in the Subaru on the deceased owner's behalf. (The owner testified at trial and laughed when he saw himself identified as "deceased" on the bill of sale. He testified that the Subaru had been stolen from him, that he neither knew nor was related to the person listed as the seller on the bill of sale, and that he had not authorized the car's sale.)

At trial, defendant provided additional details about her acquisition of the Subaru, which she had not remembered when Welch stopped her. She testified that she had bought the car from a person who identified himself as "John" and that the transaction had been completed at a Safeway on SE 122nd Street and Powell Avenue in Portland. She said that she gave John $500 in cash and that he gave her the car along with the handwritten bill of sale. On cross-examination, she testified that John had not produced the title to or registration for the car when he sold it to her, that she had not attempted to register the car with the state, and that John had not provided any evidence to show that he had inherited the car or was otherwise authorized to sell it

---

[2] In addition to Welch's description of the keys, the state introduced photographs of the keys and the keys themselves as exhibits so that the jurors could make their own assessment of the keys' appearance.

on the deceased owner's behalf. Finally, defendant acknowledged on direct examination that she had pleaded guilty to felony theft in 2013 and 2014 and to misdemeanor theft in 2014, 2017, and 2018.

On appeal, defendant assigns error to the trial court's ruling denying her motion for judgment of acquittal. On that issue, the information alleged that defendant "did unlawfully and knowingly take, operate, ride in, exercise control over and otherwise use a vehicle, to wit: 1993 Subaru Impreza Outback, without the consent of the owner," in violation of ORS 164.135(1)(a). At trial, the state did not contend that defendant took the Subaru on January 12, 2018. Rather, it contended that, even if someone else stole the Subaru, defendant knew that the Subaru was stolen and, as a result, knew that she did not have the owner's consent to "operate, *** exercise control over [or] otherwise use" the Subaru. *See* ORS 164.135(1)(a) (prohibiting those acts without the owner's consent).

At trial and again on appeal, the parties disagree whether the evidence was sufficient to permit a reasonable juror to infer that defendant knew the Subaru was stolen. *See State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) (explaining that, even though ORS 164.135(1)(a) does not specify a culpable mental state, the charging instrument in that case alleged that the defendant had acted knowingly and thus required proof of that mental state). We recently have addressed that issue in a series of cases. *See, e.g.*, *State v. Connelly*, 298 Or App 217, 445 P3d 940 (2019); *State v. Pierce*, 296 Or App 829, 440 P3d 98 (2019); *State v. Korth*, 269 Or App 238, 344 P3d 491 (2015). Although the answer to that issue will vary depending on the facts and circumstances of each case, our cases provide some guidance. We have recognized that evidence of general wrongdoing or suspicious behavior, standing alone, will ordinarily not be sufficient to permit a reasonable inference that a defendant knew that the car he or she was using had been stolen. *Korth*, 269 Or App at 246-47; *State v. Shipe*, 264 Or App 391, 398-99, 332 P3d 334 (2014). In reaching that conclusion, we have found it telling that more specific indicia of theft—for example, a shaved key, damage to the steering column,

or the defendant's awareness that there was no proof of registration—were absent from the record. *See Korth*, 269 Or App at 247; *Shipe*, 264 Or App at 397-98.

Our decision in *Shipe* is illustrative. In that case, the defendant was driving a truck that someone else had stolen. *See* 264 Or App at 392 (noting that the truck had been stolen while the defendant was incarcerated). The cab of the truck contained evidence of drug use, stolen property, and a case labeled "crime committing kit." *Id.* at 393. There was also evidence that the defendant had lied when asked who had let him use the truck; the defendant told an officer that "Richey" had allowed him to use the truck when the trier of fact could find that someone else (the defendant's girlfriend's son) had let him use the truck. *Id.* at 393, 398.

Although there was evidence in *Shipe* that the truck had been stolen, we explained that there was no evidence that the defendant was aware of that fact. *Id.* at 397-98. For example, although the key that the defendant was using to operate the truck did not in fact belong to the truck's owner, there was "no evidence that the key looked suspicious or that the defendant knew that the key did not belong to anybody who was authorized to use the truck." *Id.* at 397. Moreover, although there was evidence that the truck had been damaged, there was no evidence whether "the windows, locks, ignition, or wiring had been damaged or tampered with," which would have permitted a reasonable inference that the truck had been stolen. *Id.* Finally, although there was no registration or proof of insurance, there was no evidence that the defendant was aware that those indicia of ownership were missing. *Id.* at 398.[3]

We explained that, although there was evidence from which a reasonable juror could find that the defendant

---

[3] As *Shipe* illustrates, a defendant's connection to the stolen vehicle can matter. Specifically, the defendant in *Shipe* apparently used the stolen truck for only a short period of time and thus would have had no reason to be aware of the absence of registration or proof of insurance without some evidence to that effect. *See* 264 Or App at 398. We have applied similar reasoning when the defendant was merely a passenger in a stolen vehicle. *See State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 44, 920 P2d 1103 (1996) (holding that, even though the vehicle's locks had been punched and the ignition area damaged, there was no evidence that the defendant (a passenger) had noticed those issues).

knew that the person who had allowed him to use the truck was involved in criminal activity, there was no evidence from which a reasonable juror could find that the defendant knew the truck had been stolen. *Id.* at 398. And, without any evidence that the defendant knew the truck was stolen, we discounted the significance of the defendant's lie regarding the person who had permitted him to use the truck. *Id.* at 398-99. We explained that a reasonable trier of fact could have inferred that the defendant lied to avoid implicating his girlfriend's son in the possession of the drugs, stolen property, and "crime committing kit" that the truck contained. *Id.* Our decision in *Korth* is to the same effect.[4]

In this case, Welch stopped defendant while she was driving a stolen car. Although defendant told Welch that she had purchased the car after seeing it for sale on Craigslist, she had no registration, proof of insurance, or evidence of ownership with her in the car. She explained that she had bought the car from an "older, white male," but she could not remember where the sale had occurred, nor could she remember the seller's name, address, or contact information. She said that she had a bill of sale either in the glove compartment or at home, but Welch could not find the bill of sale or any indicia of ownership when he looked in the glove compartment.

To be sure, defendant offered additional details at trial. She testified that she had bought the car from "John" and that the sale had been completed in a Safeway parking lot. Additionally, she introduced a document captioned

---

[4] In *Korth*, an officer stopped the defendant who was driving a stolen Chevy Silverado. 269 Or App at 240. In the bed of the truck, which was covered by a canopy, the officer found two bags containing drug paraphernalia that the defendant initially denied were his. *Id.* at 241. Next to the bags were a "'couple huge sets' of 'jiggle keys,'" which are "regular old keys that [people] use to steal Honda Accords and Toyota Camrys *** or other keys that sometimes car thieves will file down" to steal other makes of cars. *Id.* (brackets in *Korth*). We explained, however, that the defendant in *Korth* was using a valid key to operate the Silverado, not the "jiggle keys" found in the back of the truck to steal Accords and Camrys. *Id.* at 247. As in *Shipe*, we reasoned that a rational juror could find from that evidence that the defendant was involved in wrongdoing; however, the evidence did not permit a reasonable inference that the defendant knew that the Silverado (as opposed to other cars) had been stolen. *Id.* Not only was the key that the defendant used to operate the Silverado valid, but there was no damage to the vehicle that would suggest that that vehicle had been stolen. *Id.*

"Bill of Sale," which was handwritten on a piece of notebook paper. However, as defendant also testified at trial, "John" provided her with no proof of ownership, such as a title or vehicle registration, and he did not provide her with any authorization that would permit him to sell the car on behalf of the supposedly deceased owner. A reasonable juror could find from that evidence that the John's ownership of (and authority to sell) the car was dubious at best and that defendant, despite her denials to the contrary, was aware of that fact.

We need not decide whether those facts, alone, would be sufficient for a reasonable juror to find that defendant was aware that John neither owned nor had authority to sell the Subaru. In this case, the evidence showed that one of the two keys that John gave defendant to operate the Subaru had been shaved so fine that the officer feared it would break if he handled it too much, and the logo on the head of that key had been obscured. The other key was for a Saturn, not a Subaru, and also was shaved, although not as severely as the first key. A reasonable juror could find from that evidence, coupled with sketchy evidence of the sale, that defendant knew that John neither owned nor had authority to sell the Subaru. Moreover, although defendant told the officer that she thought the keys were just worn with age, a reasonable juror could find from an examination of the keys that age alone did not explain their condition. And age does not explain why one of the keys was for another make of car. On this record, the trial court correctly denied defendant's motion for judgment of acquittal.

Defendant also assigns error both to the trial court's instruction that the jury could convict the defendant if 10 out of the 12 jurors agreed and to the court's acceptance of the jury's nonunanimous (10-2) verdict. Defendant acknowledges that she did not raise those issues below but argues that the plain error doctrine permits her to raise them for the first time on appeal. We agree with defendant that, after the Court's decision in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the error is plain, and we exercise our discretion to correct that error for the reasons stated in *State v. Ulery*, 366 Or 500, 503-04, 464 P3d 1123

(2020). We accordingly reverse the judgment of conviction and remand for further proceedings.[5]

Reversed and remanded.

---

[5] Given our resolution of the instructional issue, we decline to reach defendant's two remaining assignments of error. One involves a trial court ruling prohibiting defendant from asking Welch on cross-examination whether he "eventually was provided with what [purported] to be a bill of sale for this car." The state does not defend the merits of that ruling on appeal, and we assume that the issue will not arise again if the case is retried. The other assignment involves a pretrial ruling that, if defendant testified, the state could ask her on cross-examination if she previously had been convicted of theft. On appeal, defendant argues that we should overrule some of our prior opinions addressing that issue and advances unpreserved due process arguments in support of that claim. We decline to address those unpreserved arguments on appeal and will address them if and when they are properly before the court on appeal from any further proceedings on remand.