206 February 26, 2025 No. 141

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACOB ROBERT SMITH,
*Defendant-Appellant.*

Clackamas County Circuit Court
21CR03206; A178981

Heather Karabeika, Judge.

Argued and submitted February 2, 2024.

Carla Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Reversed.

**MOONEY, S. J.**

Defendant appeals a judgment of conviction for the unauthorized use of a vehicle (UUV), ORS 164.135. After a bench trial, the court acquitted defendant of felon in possession of a firearm (Count 1) and found him guilty of the unauthorized use of a vehicle (Count 2) and possession of a stolen vehicle, ORS 819.300 (PSV) (Count 3). Count 3 was merged with Count 2, and the court entered a judgment of conviction solely on Count 2, UUV. Defendant assigns error to the trial court finding him "guilty of PSV" and "guilty of UUV."[1] He argues that there was insufficient evidence to establish the required culpable mental state for UUV and for PSV, and that the state thus failed to meet its burden of proof on each of those charges. We agree and reverse.

## I.   STANDARD OF REVIEW

We review "the sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element[s] of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). The question is not "whether we believe that defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for the [factfinder] to so find." *Id.* To the extent that the parties disagree about the required mental state for UUV and/or PSV, that is a question of statutory construction which we review for legal error. *State v. McQueen*, 307 Or App 540, 544, 478 P3d 581 (2020).

## II.   FACTS

We state the facts in accordance with our standard of review. Officer Jason Pohl responded to a report of a suspicious person seen "working out" and "going in and out of a car" parked in a shopping center parking lot. When Pohl arrived, he saw defendant with his knees on the driver's

---

[1] When a defendant waives jury and proceeds with a bench trial, "a challenge to the legal sufficiency of the state's evidence during closing argument can be 'the equivalent of a motion for judgment of acquittal' for preservation purposes." *State v. Giron-Cortez*, 372 Or 729, 733 n 3, 557 P3d 505 (2024). That is what defendant did here.

seat and "his feet hanging out of the car." Pohl thought that it looked like defendant was "reaching for something in the middle of the vehicle." The vehicle had no license plates.[2] It is unclear whether there was a temporary tag taped to the back window. Pohl asked defendant if defendant was okay. Defendant responded that he had been waiting for a friend to work out with but that the friend "didn't show," and that he was continuing to wait for the friend to go a restaurant. Defendant told Pohl that he had just been released from jail two days earlier. Pohl questioned defendant about who owned the vehicle:

"DEFENDANT: I don't know who the—the registered owner is, but it's my buddy Chris'.

"OFFICER []:   Chris—Chris what?

"DEFENDANT:   I don't know his last name.

"OFFICER []:   What? Come on, man. Help me out here.

"DEFENDANT:   He doesn't have his last name on * * * Instagram or Facebook, or whatever. * * *

"OFFICER []:   Okay. Cool. So this—this isn't your car, but you're in it?

"* * * * *

"DEFENDANT:   Yeah.

"OFFICER []:   Does that make sense?

"DEFENDANT:   Yeah, it makes sense, yeah.

"* * * * *

"DEFENDANT:   Yeah. I mean, I'm in it, but * * * I have permission to have the vehicle is what I'm saying.

"OFFICER []:   Who gave you permission for that?

"DEFENDANT:   The guy who owns it or bought it or whatever[.]"

---

[2]  Pohl testified that a vehicle without plates can mean

"a lot of different things. It could be that the vehicle has—hasn't been registered. The plates have been stolen.

"It can be the vehicle is stolen, but that's not—that's not too common nowadays because nowadays, people just steal new plates and put them on the cars to make them look less suspicious, so. It can be a lot of different things."

Pohl ran the Vehicle Identification Number (VIN), determined that the vehicle had been reported stolen the week before, and then placed defendant in handcuffs.

Pohl found the original car keys on the passenger seat; an unloaded firearm in the center console; a check made out to defendant; checks made out to a third party; drug paraphernalia; and defendant's mail and prison discharge papers. Defendant explained that he had been riding as a passenger and that Chris had been driving. Chris left defendant in the vehicle with the keys and instructions to wait for him (meaning Chris) to return so they could exercise together. Chris had not returned "after a long time," and defendant began to exercise on his own. Defendant acknowledged that it was possible that Pohl may have seen him driving around the parking lot, but defendant maintained that he had neither stolen the vehicle nor driven it to the parking lot. Defendant maintained that he had permission to be in the vehicle.

There is no dispute that the vehicle was stolen by some other person while defendant was incarcerated. It is likewise undisputed that when Pohl found defendant in the vehicle, he observed no damage that suggested that the vehicle had been stolen. In other words, the windows, doors, ignition, and dashboard appeared to be undamaged and there was no evidence that the vehicle was damaged.

## III.   TRIAL COURT'S VERDICT

Following the bench trial, the trial court announced its verdict as follows:

"Counts 2 and 3, [defendant], I am going to find you guilty of [UUV and PSV]. I do believe that the circumstantial and direct evidence is that you were in possession of that car, that it was stolen, that you—your behavior was obviously squirrely.

"Your comments were, frankly, you know, incriminating. Your conduct was incriminating. Your items are throughout the vehicle, and clearly this vehicle had not been taken by you but taken by somebody else. The nonexistent Chris person, of course, does not exist and I think we all know that."

## IV.   ANALYSIS

A. *Sufficiency of the Evidence to Support Conviction for UUV*

As noted, defendant contests the sufficiency of the evidence to support his conviction for UUV. A person commits the crime of UUV when the person (1) knowingly exercises control over or uses another's vehicle, (2) "is aware of and consciously disregards a substantial and unjustifiable risk that" the vehicle owner does not consent to that control or use, and (3) the owner did not consent to the control or use. ORS 164.135(1). At issue is the sufficiency of the evidence to support the second element. Historically, ORS 164.135 did not assign a culpable mental state for UUV, and we concluded that "the state was required to prove the culpable mental state specified in the indictment." *State v. Fitch*, 335 Or App 556, 557, 559 P3d 429 (2024). Our opinions, thus, applied a knowing mental state when the charging instrument alleged actual knowledge. *See e.g.*, *State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) (explaining that the state was required to prove that the defendant actually knew the car was stolen because the state charged him with UUV with a knowing mental state); *State v. Shipe*, 264 Or App 391, 395, 332 P3d 334 (2014) (applying a knowing mental state where UUV was charged with a knowing mental state).

In 2019, the legislature amended the UUV statute "to specify that someone is guilty of UUV when that person is 'aware of and consciously disregards a substantial and unjustifiable risk' that the owner did not consent to the person's use of the vehicle, ORS 164.135(1)(a)(B), establishing recklessness as the culpable mental state for the offense[,] ORS 161.085(9)."[3] *Fitch*, 335 Or App at 558; *see also State v. Huerta-Contreras*, 336 Or App 251, 253, 560 P3d 728 (2024) (explaining that the 2019 amendment "add[ed] a reckless culpable mental state as to the owner's consent to use the

---

[3]  ORS 161.085(9) provides:

"'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

vehicle"). Accordingly, we must assess whether the evidence is sufficient to support a finding that defendant was aware of, but consciously disregarded, a substantial and unjustifiable risk that he did not have the permission of the vehicle's owner to use it.

We conclude that it is not. Proof of defendant's awareness may be by direct evidence, circumstantial evidence, or by reasonable inferences. *State v. Connelly*, 298 Or App 217, 222, 445 P3d 940 (2019). The state may rely on a reasonable inference so long as a rational factfinder can be convinced beyond a reasonable doubt that the inference follows from the underlying facts. *Bell*, 220 Or App at 270. "[S]peculation and guesswork are not" admissible as evidence of anything. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). A defendant's awareness cannot be established through the "'stacking of inferences to the point of speculation'" or where "'the logic is too strained[.]'" *State v. Peirce*, 296 Or App 829, 834, 40 P3d 98 (2019) (quoting *Bivins*, 191 Or App at 466-68). For example, "evidence of general wrongdoing or suspicious behavior, standing alone, will ordinarily not be sufficient to permit a reasonable inference" about a defendant's knowledge. *State v. Witt*, 313 Or App 479, 483, 493 P3d 543 (2021).

Our recent decisions in *Fitch* and *Huerta-Contreras* illustrate where rational inferences cross the line to impermissible speculation in the context of assessing whether the evidence is sufficient to support an inference that a defendant was aware of, but consciously disregarded, a substantial and unjustifiable risk that an owner did not consent to a vehicle's use. Those decisions demonstrate that the evidence here is not sufficient to support a nonspeculative finding that defendant was aware of, but disregarded, a substantial and unjustifiable risk that he lacked the consent of the owner to use the vehicle. In particular, contrary to the trial court's conclusion, they demonstrate that suspicious circumstances—such as "squirreliness" or lying—standing alone do not allow for a nonspeculative inference that a defendant was, in fact, aware of a substantial and unjustifiable risk that they did not have the owner's permission to use the vehicle.

We affirmed a conviction for UUV in *Fitch* where the

"[d]efendant's dubious story about the purchase, the lack of a bill of sale or title for the car, and possession of other documents resembling various registrations in names that were not defendant's name were sufficient evidence that he disregarded the risk that the owner did not consent, which was a gross deviation from the standard of care that a reasonable person would observe in a similar situation."

*Fitch*, 335 Or App at 558-559. But we reversed a conviction for UUV in *Huerta-Contreras* where

"[t]he officer witnessed no suspicious conduct beyond defendant sitting late at night in the driver's seat of a car that had been reported stolen earlier that day. The type of inference the officer needed to make to conclude that defendant possessed the requisite mental state amounted to a mere hunch[.]"

*Huerta-Contreras*, 336 Or App at 254. *Huerta-Contreras* concerned the question of probable cause in the context of the denial of a motion to suppress. *Id.* at 252. The ultimate legal question was, thus, different. But the type of inference required here is no less a hunch than in *Huerta-Contreras*. The fact that defendant gave an arguably implausible story for how he came to be in possession of the vehicle, and the fact that the vehicle lacked license plates, might have inspired a hunch about whether defendant had the owner's consent to be there. But without something more, such as the other suspicious registration documents that were present in *Fitch*, it was not enough to support the required mental state for UUV.

B.   *Sufficiency of Evidence to Support Conviction for PSV*

Defendant also contests the sufficiency of the evidence to support his conviction for PSV under ORS 819.300(1). ORS 819.300(1) provides that:

"[a] person commits the offense of possession of a stolen vehicle if the person possesses any vehicle which the person knows or has reason to believe has been stolen."

The phrase "reason to believe" is not defined by ORS 819.300. Defendant argues that the culpable mental state required

for PSV is akin to criminal recklessness—"something less than actual knowledge but something more than a hunch." The state argues that the mental state for PSV is "a low bar, similar to the culpable mental state of criminal negligence." The parties devoted significant portions of their briefs to the construction of the statutory phrase "reason to believe,"[4] but we do not understand there to be a genuine disagreement as to the required mental state.

Defendant refers to the contemporary *Webster's Third New International Dictionary* for definitions of the words "reason" and "believe." The state refers instead to dictionary definitions in place in 1927, when the phrase "reason to believe" was first written into the PSV statute. We note that the plain meaning of "reason" and "believe" have not meaningfully changed over the last one hundred years and that both parties effectively present the same definition for "reason to believe." As defendant argues, there must be evidence of "facts or circumstances from which one would reach the opinion—have reason to believe—that the vehicle was stolen." As the state argues, there must be "evidence that a person was aware of a circumstance that would induce a belief that the vehicle was stolen." Without belaboring the point, we discern no practical difference between the two. Each party correctly argues that the phrase "reason to believe"—on its face—requires evidence that the defendant was subjectively aware of facts that would give a rational person cause to think that the vehicle was actually stolen.

As to the sufficiency of the evidence, the evidence in the record does not allow for a reasonable inference that defendant was aware of circumstances that gave him reason to believe that the vehicle was stolen. While it might be inferable that defendant was lying about how he came into possession of the vehicle, the inference of falsity, standing alone, does not allow for a nonspeculative affirmative inference that the circumstances in which defendant came into possession of the vehicle were ones that put him on notice that it was stolen. And apart from defendant's own story about how he obtained the vehicle, the record contains no

---

[4] The parties engage in statutory construction using the familiar methodology set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

evidence of the circumstances in which defendant obtained the vehicle or of other circumstances that would support a finding that defendant had reason to believe that the vehicle was stolen.

Reversed.