Argued and submitted October 31, 2002, reversed in part; remanded for
resentencing; otherwise affirmed January 21, 2004

STATE OF OREGON,
*Respondent,*

*v.*

MICAH DALE BIVINS,
*Appellant.*

CF00-0191; A112238

83 P3d 379

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Following a jury trial, defendant was convicted of felony assault in the fourth degree, ORS 163.160, and harassment, ORS 166.065. The assault was elevated from a misdemeanor to a felony offense based on the state's allegation and the jury's finding that a child witnessed the assault. *See* ORS 163.160(3)(c). On appeal, defendant challenges only his assault conviction, arguing that the evidence was legally insufficient to prove the aggravating element and that, as a result, defendant is guilty only of misdemeanor assault. We agree. We therefore reverse in part, remand for entry of a judgment of conviction for misdemeanor assault in the fourth degree and for resentencing, and otherwise affirm.

■ On appeal, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999). We therefore state the facts in that light, although we note some of the disputes in the evidence because they provide added context for aspects of our discussion.

The charges against defendant arose out of a domestic fight between defendant and Payne, who is his ex-girlfriend and the mother of his two daughters. The children, ages 5 and 3 at the time, were home during the fight. Payne and defendant had separated about a month before, and defendant was at Payne's home to watch the children. According to Payne's report to the investigating police officers, the fight began over an argument about the use of the phone. In the course of the argument, defendant threw the phone against the wall, breaking it. At that point, according to what Payne told the officers, the confrontation escalated to

"pushing and shoving. [Payne] pushed [defendant] back. This occurred in the bedroom to the living room area. She got the phone and took it outside to use the phone. He unplugged the phone from inside. She had to force her way back into the residence.

"They argued some more, during which time he hit her in the face. She believed it was with an open hand, but she couldn't recall at that time. He knocked her to the floor a couple of times, and she fought back, left the residence, went to the neighbor's house where she had them call 911."

When the officers responded to the report of the fight, they observed that Payne had a small cut on her lip that appeared to be a fresh injury and that one of her cheeks was a "little red." Defendant admitted to the officers that he slapped Payne with an open hand and pushed her down, but he claimed that he did so only after Payne attacked him physically. Payne told the officers that defendant was the initial aggressor, but she admitted to reacting by hitting and shoving him.

The officers arrested defendant. In charging him with felony assault, the state alleged that the assaultive conduct was witnessed by the older of the two children. Specifically, the indictment pleaded:

"The defendant, on or about 03/16/00, in the County of Umatilla and State of Oregon, did unlawfully and inten- tionally cause physical injury to Noel Payne by striking her in the face, and the defendant's conduct was witnessed by [C], the minor child of the defendant and Noel Payne."

Consequently, the burden fell on the state to prove that C, the older of the two children, witnessed defendant striking Payne in the face. *See State v. Reynolds*, 183 Or App 245, 251, 51 P3d 684, *rev den*, 335 Or 90 (2002) (factors that aggravate fourth-degree assault to a felony are material elements of the offense).

At trial, the state did not call C to testify about what she had witnessed. Nor did the state establish that the officers questioned the children as part of their investigation or that the officers asked Payne or defendant any questions about the children's whereabouts during the fight or other facts that might bear on what either child saw, heard, or understood to be happening. To establish where the children were when the assault occurred, the state relied entirely on Payne's testimony, specifically the following answers to the prosecutor's questioning:

"Q    Did you remember telling the neighbor that the defendant hit you and you needed the police?

"A    Yes.

"Q    The children were home at the time?

"A    Yes.

"* * * * *

"Q    Where were the kids?

"A    I believe the majority of the time they were in their bedroom when we started—

"Q    Where were you—

"A    When we started arguing I sent them to their room.

"Q    Okay, you said the majority of the time, where were they the rest of the time?

"A    Kitchen, bathroom, tried to go outside and play. I told them to stay in the house, go to the bedroom.

"Q    So they were moving around the house at the same time you were moving around the house?

"A    At the beginning of our argument they tried to go outside to play, and I told them to go to their room because I couldn't keep an eye on them while I was having an argument with [defendant]."

The state also established, through Payne's testimony and that of the investigating officers, that Payne's house was very small, had thin walls, and that noises in one area of the house could be heard in the other areas of the house. As Payne described it, "you can hear someone sneeze across the house." According to one of the investigating officers, activities in other parts of the house could "most definitely" be heard elsewhere in the house. That officer also explained that, because of the house's small size, "[u]nless you're in another room with a closed door, * * * you'd still be able to see what's going on [in another area of the house] unless you had this closed door in front of you."

Payne, however, was not asked for further details that might establish what the children likely heard or saw. By the time of trial, Payne was a less-than-fully-cooperative

witness for the state. Payne had recanted her statements to the officers and denied that defendant had slapped her during the fight. She instead claimed that the door was jammed when she tried to leave to call 9-1-1 and, as she forced it open, it hit her in the lip. Payne also testified that she sent the children to their bedroom so that they would not "perceive" the fight. Payne was never asked about the noise level of the fight more generally, the sound made when defendant hit her in particular, whether the children left their bedroom door open, whether she knew what the children were doing while in their bedroom, or similar facts.

■      At the end of the state's case-in-chief, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to establish that the assault was witnessed by either of the children. The trial court denied the motion. On appeal, defendant renews the arguments that he made to the trial court, urging that a jury could reasonably infer from the evidence that the children could have heard their parents *arguing* but that there was no basis for a reasonable inference that either child perceived the *assault* specifically. The state counters that, viewed in the light most favorable to the state, a jury reasonably could infer "that the children actually saw defendant's assault, and it is virtually certain that they heard the sound of defendant's hand striking their mother's face wherever they were."

■      We begin by examining the elements of assault in the fourth degree and particularly the element that enhanced the assault to a felony in this case. Under ORS 163.160, a person commits assault in the fourth degree by intentionally, knowingly, or recklessly causing physical injury to another.[1]

---

[1] ORS 163.160 provides, in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another[.]

"* * * * *

"(2) Assault in the fourth degree is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"* * * * *

Ordinarily, that crime is a misdemeanor. ORS 162.160(2). Pursuant to subsection (3)(c), however, the crime is elevated to a felony if, as the state sought to prove in this case, the assault is witnessed by the defendant's or the victim's minor child.[2] The statute defines "witnessed" as "seen or directly perceived in any other manner by the child." ORS 163.160(4). The words "directly" and "perceived" are not statutorily defined, but both are words of common usage. In this context, "perceived" connotes recognition or consciousness; "directly" means first-hand or personally.[3] So, for fourth-degree assault to be elevated to a felony based on proof that a child "witnessed" the assault, the state must prove that the child personally saw or through some other first-hand sense or sensation was conscious of and recognized the assaultive conduct as it occurred.

In establishing that element, the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence. *See Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002); *State v. Beason*, 170 Or App 414, 425, 12 P3d 560 (2000), *rev den*, 331 Or 692 (2001). An inferred fact must be one that the jury is convinced follows beyond a reasonable doubt from the underlying facts. *State v. Lopez-Medina*, 143 Or App 195, 200, 923 P2d 1240 (1996). But the

---

"(c) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim.

"(4) For the purposes of subsection (3) of this section, an assault is witnessed if the assault is seen or directly perceived in any other manner by the child."

[2] The crime is also elevated to a felony if the assault is committed in the "immediate presence" of the defendant's or the victim's child. ORS 163.160(3)(c). In this case, the state did not plead or attempt to prove that alternate basis for elevating the crime to a felony.

[3] As pertinent here, *Webster's Third New Int'l Dictionary* 1675 (unabridged ed 1993) defines "perceive" as:

"* * * to become conscious of : DISCERN, REALIZE * * *[;] to recognize or identify[;] * * * to become aware of through the senses : NOTE, OBSERVE * * * [.]"

And *Webster's* defines "directly" to include:

"without any intervening space or time[;] * * * in close relational proximity * * *[;] without any intervening agency or instrumentality or determining influence : without any intermediate step * * *[;] FACE-TO-FACE : in person * * *."

*Id.* at 641.

requirement that the jury be convinced beyond a reasonable doubt does not mean that a particular inference must inevitably follow from the established facts. *Beason*, 170 Or App at 423-24. Rather, the established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide. *State v. Hall*, 327 Or 568, 574, 966 P2d 208 (1998); *Beason*, 170 Or App at 425.

■ Whether particular circumstantial evidence is sufficient to support a particular inference, however, is a legal question for a court to decide. *Delgado*, 334 Or at 135. "There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation." *State v. Vaughn*, 175 Or App 192, 201, 28 P3d 636 (2001). Reasonable inferences are permissible; speculation and guesswork are not. *See Lemons et al v. Holland et al*, 205 Or 163, 192, 284 P2d 1041 (1955) ("Verdicts of a jury must be based upon substantial evidence, not upon speculation."). As we have observed before, the line between permissible inferences and impermissible speculation is "sometimes faint." *Hutchinson and Hutchinson*, 187 Or App 733, 741, 69 P3d 815 (2003). The line is also sometimes difficult to articulate with precision. But we agree with the federal courts, which frequently describe it in these terms:

> "The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. As the Supreme Court has stated, 'the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' *Galloway v. United States*, 319 US 372, 395, 63 S Ct 1077, 87 L Ed 1458 (1943)."

*Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981).[4] Consistently with that

---

[4] *See also Poppell v. City of San Diego*, 149 F3d 951, 954 (9th Cir 1998) (quoting *Tose* as quoted in Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal*

description, we have held evidence insufficient to support an inference when the conclusion to be drawn from it requires "too great an inferential leap"—that is, when the logic is too strained. *See, e.g., Lopez-Medina*, 143 Or App at 201. Likewise, evidence is insufficient if it requires the stacking of inferences to the point of speculation. *State v. Piazza*, 170 Or App 628, 632-33, 13 P3d 567 (2000) ("the stacking of inferences that the state urges is simply too speculative"); *Wood v. Baldwin*, 158 Or App 98, 103, 972 P3d 1221, *rev den*, 329 Or 61 (1999) (similar conclusion).

In this case, we agree with defendant that the state's evidence falls on the side of speculation, not reasonable inference. As earlier noted, the state had no direct evidence of what the children saw or otherwise perceived; the state's case as to what C "witnessed" was purely circumstantial. In attempting to prove that element circumstantially, the state relied on two predicate facts: the children's presence in the house at the time of the assault, and the ease with which activities in one area of the house could be easily seen and heard elsewhere in the house. In effect, the state's theory was that: (1) the children were in the house; (2) by being in the house, they could have heard or seen defendant strike Payne; and therefore (3) the jury could infer that C heard or saw the assault with sufficient awareness to have witnessed it.

To be sure, the record provides an ample basis for the first two steps in that line of logic. Payne's testimony provided the jury with a basis to conclude that the children were in their bedroom during most of the argument, and in particular were there toward the end of the argument when defendant slapped Payne in the face.[5] Both Payne's testimony and

_____

*Thinking* 26-27 (3d ed 1997)); *United States v. Jones*, 49 F3d 628, 632 (10th Cir 1995); *United States v. Walters*, 89 F Supp 2d 1206, 1211 (D Kan 2000).

[5] At oral argument, the state urged that, viewed in the light most favorable to it, the record would support an inference that the children were in the same room as Payne when defendant slapped her. Specifically, the state pointed to Payne's answers to the questions on the children's whereabouts (set out verbatim in our description of the factual record). The state emphasized that Payne did not say explicitly and unequivocally that the children went to their room as Payne directed. We disagree; the only fair import of Payne's testimony is that, with the exception of the beginning of the fight, the children were in their room as Payne directed.

In all events, the state's assertion proves too much. Inferring from Payne's testimony that the children disobeyed her and did not go to their room leaves the

that of the investigating officers provide sufficient grounds to conclude that the argument and the fight could be easily heard in other areas of the house, and easily seen if doors were open.

But the third step in the state's line of logic requires several additional intermediate inferences. To infer that the children heard the assault, as distinct from the general argument and fight between the parties, a factfinder would first have to infer that the open-hand slap made a distinctive sound. We agree that a jury could so infer, because such an inference is consistent with common experience. *See Skeeters v. Skeeters*, 237 Or 204, 214, 389 P2d 313 (1964) (although a jury cannot be permitted to speculate, it may rely on common experience to draw inferences). But that inference, without more, would not support the further inference that the children actually heard the assault. The assault was a fleeting event in what was otherwise a more protracted fight marked by argument between Payne and defendant, the throwing of at least one object against the wall (the phone), Payne's forcible reentry into the home, and mutual shoving and pushing throughout the fight. The record suggests that defendant slapped Payne as they argued and pushed and shoved each other. Did the sound of the slap rise above the noise of the argument or the other sounds of their physical fighting? The record is silent. No predicate facts assist in informing any inference, and any conclusion would constitute speculation or guesswork.

Even if a factfinder could permissibly infer that the sound of the slap rose above the noise of the argument and fight more generally, the question remains: Did the children hear it or see it, and did C in particular identify it for what it was—that is, the sound of defendant slapping Payne? Again, more intermediate inferences are required. Common experience would permit one such inference—*i.e.*, that C, at age five, was sufficiently mature to distinguish the assaultive

---

record completely devoid of testimony as to where they did go. They may have gone to their bedroom; they may have been in some other part of the house; they may have been in the same room with Payne and defendant; or they may have gone outside to play, as they wanted to do. In short, were we to infer, as the state urges, that the children disobeyed Payne, any conclusion as to where they then went would be entirely speculative.

conduct from other aspects of the fight. But even that inference requires the further inference that the children—and the five-year-old in particular—paid attention to the fight. On that point, common experience suggests many possibilities. The children may have been playing and paying little or no attention to the fighting. Or the children may have wanted to distract themselves from their parents' fighting and did so in some other way. Conversely, they may have wanted to know what was happening and listened or watched intently. For them to have actually seen the fight, the bedroom door would have to have been open, perhaps fully, depending on the configuration of the room and the children's positions inside it. Again, no predicate facts assist in logically inferring what the children were doing or what they actually saw and heard. Any conclusion necessarily would be speculative or involve guesswork.

In short, the minimal circumstantial evidence presented by the state requires too much stacking of inferences and, ultimately, too great an inferential leap. For that reason, we agree with defendant that the evidence is legally insufficient to permit a reasonable inference that C personally saw, or through some other first-hand sense or sensation was conscious of, and recognized, the assaultive conduct as it occurred, thereby "witnessing" it.

In so concluding, we do not discount the difficulty that the state faced in this case, as in so many domestic violence cases. Payne had recanted and denied that the assault occurred at all. She was no longer a cooperative witness and was not particularly helpful in establishing facts that could serve as predicates for the inference the state needed. The investigating officers, who may have been concerned foremost with securing the victim's and children's safety and sorting out the who-did-what-to-whom aspects of the assault, apparently did not ask Payne, defendant, or the children themselves about the children's whereabouts or activities at the moment of the assault. And the older child was not called as a witness, presumably—and understandably—so that she would not be forced to testify against her own father or relive the fight, which could compound any trauma caused by the underlying events. But even in the most difficult-to-try cases, speculation cannot be permitted to substitute for evidence,

and the state's burden cannot be relaxed to the point where less evidence equates to more proof by giving the state the benefit of a broader range of imaginable possibilities. Here, the established facts are simply too few and too limited to support the inference that the state needed to aggravate the assault to a felony. For those reasons, we conclude that defendant's motion for judgment of acquittal should have been granted.

Conviction for felony assault in the fourth degree reversed; remanded for entry of judgment of conviction for misdemeanor assault in the fourth degree and for resentencing; otherwise affirmed.