Argued and submitted August 27, reversed December 10, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DANIELLE NELSON,
*Defendant-Appellant.*

Umatilla County Circuit Court
CR051009; A133995

198 P3d 439

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Karla H. Alderman, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Schuman, Judge, and Riggs, Senior Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant's two-and-one-half-year-old child wandered out of the apartment where defendant was staying, then walked across a large parking lot and a busy street into a grocery store. Defendant did not contact police until six hours had elapsed. She was subsequently convicted of recklessly endangering another person. On appeal, she argues that the state did not present sufficient evidence that she acted "recklessly," that is, that she was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that her daughter was unsupervised. ORS 161.085(9). Therefore, she argues, the trial court erred in denying her motion for a judgment of acquittal. We reverse.

The facts, presented in the light most favorable to the state, *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994), are as follows. Defendant and her two-and-one-half-year-old daughter, K, were visiting at defendant's boyfriend's apartment where he lived with his mother, Maria, and his 16-year-old sister, Consha. All three residents were at home. Defendant's boyfriend was asleep in one of the apartment's two bedrooms.

Defendant decided to give K a bath. When she finished, she stepped into the shower herself, with K still in the bathroom. While defendant and K were in the bathroom together, Maria left the apartment. Thereafter, defendant opened the door to let K out into the apartment. Before defendant came out of the bathroom herself, Consha also left the apartment—leaving defendant, defendant's boyfriend, and K. As Consha left, she closed the front door behind her. Consha did not tell defendant, who was still in the bathroom, that she was leaving.

While defendant was still in the bathroom, K apparently wandered out of the apartment, through the apartment complex parking lot, and across a busy street into a grocery store. At approximately 11:30 a.m., an employee noticed K alone in the store. Unable to find anyone who knew K, the employee contacted the Milton-Freewater Police Department. Officer Roberts responded. He and Sergeant Richman separately canvassed the neighborhood near the store for

approximately 45 minutes searching for K's home and family, without success.

Meanwhile, at the apartment, defendant came out of the bathroom and discovered that Consha and K were gone. Just before 6:00 p.m., defendant asked her neighbors if they had seen K, and those neighbors informed defendant that K was at the police station. Defendant then contacted the Milton-Freewater Police Department to report that K was missing and spoke with Officer Goodwater. Defendant told Goodwater that she thought K had been with Consha and that she had been looking for K for "[a]bout six hours."

Defendant was charged with recklessly endangering another person, ORS 163.195 (set out below).[1] At trial, Consha testified that she had known defendant for four years and that she saw defendant about once a month. She stated that she had watched K approximately five times before for short periods, that she had never taken K out of the apartment, and that she had watched K only when she was specifically asked to do so—unlike the day that K went missing, when no arrangements had been made. Nonetheless, Consha also stated that, on the afternoon of the incident, "a lot of people [were] looking for [her]" because they thought she "was aware of where [K] was" and because she was the last person known to have been with K before K disappeared.

At the close of the state's case, defendant moved for a judgment of acquittal on the ground that the state had failed to prove that she had acted "recklessly":

"When a person is charged with reckless endangerment of another person, it's incumbent on the state to prove that the person was aware of * * * and disregard[ed] a substantial risk of serious physical injury.

"No doubt, when the little girl made her way out finally to the street, * * * there is a risk of substantial injury, but that's too far removed from what the mom knew."

The trial court denied the motion, defendant presented evidence in her defense, and the state presented evidence in

---

[1] Defendant was also charged with second-degree child neglect, ORS 163.545, but the jury returned a verdict of not guilty.

rebuttal. The jury returned a verdict of guilty. On appeal, defendant renews her argument that, on the basis of the evidence that the state presented, no reasonable juror could have found beyond a reasonable doubt that she was aware of and consciously disregarded the risk that K was wandering alone outside the apartment for six hours.

 We will uphold a conviction if the evidence, including circumstantial evidence, and all reasonable inferences flowing therefrom, would enable a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002); *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). If the established facts support multiple inferences, which inference to draw is a decision for the jury. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Whether circumstantial evidence is legally sufficient to support a particular inference, however, is a question of law. *Id.* "Reasonable inferences are permissible; speculation and guesswork are not." *Id.*

■ ORS 163.195, the "reckless endangerment" statute, provides, in part:

> "(1) A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

"Recklessly" is defined by ORS 161.085(9) as follows:

> " 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Thus, to obtain a conviction under the reckless endangerment statute, the state generally has to prove, first, that the defendant performed an act, or omitted to perform an act as required by law, ORS 161.085(3), (4); second, that the act or omission created a substantial risk of serious physical injury to another person; third, that the act or omission presented such a substantial and unjustifiable risk of serious physical

injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act; fourth, that the defendant was aware of the risk; and fifth, that the defendant consciously chose to disregard the risk.

■ Here, we agree with the state (and defendant concedes) that allowing a two-and-one-half-year-old child to wander unattended in a commercial and residential neighborhood for six hours put the child at substantial risk of sustaining serious physical injury. We also agree that doing so is a gross deviation from a reasonable standard of care. The dispositive elements, however, are the fourth and fifth: whether defendant was aware of the risk that K was unattended and whether, if she was, she consciously disregarded that risk.

We need not decide whether the state presented evidence from which a rational juror could conclude beyond a reasonable doubt that defendant was aware of the risk that K was unattended, because we conclude that, even if she had that awareness, there is no evidence that she consciously disregarded it.

The only direct evidence is defendant's statement to Officer Goodwater that she had been looking for K during the entire six-hour absence. The state argues,

> "[A] rational juror could conclude that defendant did little to try to find [K] until she contacted the police more than six hours later. For example, it is reasonable to infer from the state's evidence that defendant did not look for [K] at the [grocery store] and that defendant was not outside near the apartment complex looking for [K] when two police officers—one of whom was accompanied by [K]—were canvassing the neighborhood."

We do not agree. First, we do not agree that the state's evidence supports the inference that defendant "did little" to look for K. The only testimony from anybody in the grocery store, the employee who found K, deals exclusively with that discovery. There is no reason to infer that that person was in the store for the entire six hours and never saw defendant, or that defendant did not come into the store and look for K without being observed by that person. Nor does the fact that the two officers who canvassed the neighborhood did not encounter defendant "outside near the apartment complex" .

prove or imply anything about the thoroughness of defendant's search; it implies only that, during the particular time period when the officers were at the complex, defendant was elsewhere. In short, to move from the facts adduced to the conclusion that defendant "did little" to search for K is not an inference; it is pure speculation. *See Bivins*, 191 Or App at 467 ("Reasonable inferences are permissible; speculation and guesswork are not.").

Second, even if the state's evidence could support the inference that defendant "did little to try to find" K, we do not agree that such an inference meets the state's burden of proving that defendant consciously disregarded the risk that K was unattended. The fact that defendant "did little" might establish, at most, that defendant was negligent in not doing more, an entirely different finding and one that cannot support a finding of recklessness. *See State v. Hill*, 298 Or 270, 279, 692 P2d 100 (1984) (distinguishing criminal negligence from recklessness).

Thus, we conclude that, even assuming that the state adduced sufficient evidence to support a rational inference that defendant was aware of the risk that K was unattended, it failed to adduce any evidence to support a rational inference that she consciously disregarded that risk. The court erred in denying defendant's motion for a judgment of acquittal.

Reversed.