Submitted August 10, 2020; conviction on Count 3 reversed, remanded for resentencing, otherwise affirmed April 28, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GLENN HARRIS,
aka Glenn Edward Harris III,
aka Glenn Edward Harris,
*Defendant-Appellant.*

Jackson County Circuit Court
18CR27562; A169453

487 P3d 421

The police stopped defendant as he was bicycling on the sidewalk with his four-year-old daughter held to his left side. Defendant gave the police his name, but he did not have identification. The police arrested him for failure to identify himself. A search incident to arrest uncovered a butterfly knife in defendant's right front pants pocket and a loaded firearm with an internal safety clipped inside the front right side of his waistband. Defendant was charged with unlawful possession of a firearm, ORS 166.250, carrying a concealed weapon, ORS 166.240, and recklessly endangering another person, ORS 163.195. The reckless endangerment charge was based on defendant's daughter not wearing a helmet and defendant carrying weapons while bicycling with her. Defendant was convicted on all charges after a jury trial. On appeal, he argues that the trial court erred in denying his motion for judgment of acquittal on the reckless endangerment charge, because the evidence was legally insufficient to support a conviction. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal on the reckless endangerment charge. Although defendant's conduct created some risk to his daughter, the evidence was legally insufficient to allow the findings required for a criminal conviction.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.

Lisa C. Greif, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

After a jury trial, defendant was convicted of unlawful possession of a firearm, carrying a concealed weapon, and recklessly endangering another person, in connection with an incident in which the police stopped him while he was bicycling on the sidewalk with his four-year-old daughter held to his side. On appeal, defendant challenges only his conviction for recklessly endangering another person (Count 3). He contends that the trial court erred in denying his motion for judgment of acquittal on that charge.[1] For the following reasons, we agree with defendant and, accordingly, reverse his conviction for recklessly endangering another person.

FACTS

We review the denial of a motion for judgment of acquittal to determine whether, viewing the facts and all reasonable inferences that may be drawn therefrom in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Wakefield*, 292 Or App 694, 695, 425 P3d 491 (2018). We state the facts in accordance with that standard.

On April 23, defendant was returning home from the grocery store. He was riding his bicycle on the sidewalk, with the roadway to his left and houses to his right. The sidewalk was flat, and he was not going fast. It was light outside. Defendant had his four-year-old daughter balanced against his left hip. She was facing outwards (her back to him) with her legs hanging alongside his left leg and her feet about two feet from the sidewalk. Defendant was holding his daughter with his left arm, while he used his right arm to steer.

Officer Slagle was driving in a marked police car when he saw defendant and pulled over. Slagle told defendant that he was stopping him because his daughter needed to be wearing a helmet and because defendant "can't hold

_____

[1] In a second assignment of error, defendant raises an alternative challenge to the same conviction, which we do not reach given our disposition.

her with one arm." As he later explained at trial, Slagle was concerned because the sidewalk "goes over multiple driveway entrances" and, in his view, most people forget to look for pedestrians on the sidewalk when they pull out of their driveways. In Slagle's view, if defendant were to make any sudden movements, he could be thrown off by the weight of his daughter and could end up swerving left and possibly falling onto her or swerving right where he would meet with a "sloping drop off" and trees.

Slagle asked defendant for identification. Defendant said that he did not have any with him, but he provided his first and last name, including spelling his first name. When asked for his middle name, defendant did not answer but instead asked why they were "going through all this." Slagle responded that he was legally stopping him for illegally carrying his daughter. Defendant said that he did not really understand what the problem was, and Slagle said he was not going to say any more. Suspecting (incorrectly) that defendant had given a false name, Slagle again asked defendant for identification, and defendant again said he did not have any. Slagle asked defendant for identification yet again, stating that he was going to be "pretty ticked off" when he searched defendant. Defendant maintained that he did not have identification with him. Around that time, Slagle radioed for backup.

Slagle told defendant that he could not leave until Slagle "figured out" who he was, that defendant was legally required to identify himself, and that Slagle could take defendant to jail based on his not identifying himself. Defendant began asserting that Slagle was violating his rights, which Slagle denied, and Slagle eventually told defendant that he was going to handcuff him for refusing to identify himself. Defendant said that he had committed no crime and should be allowed to continue on his way. The backup officer then arrived. There was continued discussion of defendant's identity, including Slagle asking defendant's daughter if she knew their address (she did not), and Slagle telling the backup officer that he did not recognize defendant. At that point, Slagle directed defendant to hand his daughter to the backup officer, which defendant did. Slagle

then handcuffed defendant and told him that he was under arrest for failing to identify himself.

Slagle searched defendant incident to arrest. He found two weapons on defendant's person: (1) a butterfly knife, which is a type of knife that opens by use of centrifugal force, in defendant's right front pants pocket, and (2) a loaded handgun concealed inside the front right waistband of defendant's pants. The gun was secured to defendant's waistband by a belt clip and was a "safe action pistol," meaning that it had an internal safety mechanism, such that the trigger had to be pulled for it to fire.

Defendant was charged with unlawful possession of a firearm, ORS 166.250; carrying a concealed weapon, ORS 166.240; recklessly endangering another person, ORS 163.195; and interfering with a peace officer, ORS 162.247. At the state's request, the interfering charge was dismissed before trial. The remaining charges were tried to a jury. At the close of the state's evidence, defendant moved for a judgment of acquittal on the reckless endangerment charge, asserting that the evidence was insufficient as a matter of law to find him guilty. The trial court denied the motion. A jury subsequently found defendant guilty on all three charges. Defendant appeals the resulting judgment, arguing that the trial court erred in denying his motion for judgment of acquittal on the reckless endangerment charge.

## ANALYSIS

"A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." ORS 163.195(1). Acting recklessly "means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." ORS 161.085(9). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Id*.

Thus, to obtain a conviction for recklessly endangering another person, the state generally has to prove (1) that the defendant performed an act, or that the

defendant omitted to perform an act required by law;[2] (2) that the defendant's act or omission created a substantial risk of serious physical injury to another person; (3) that the defendant's act or omission presented such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act; (4) that the defendant was aware of the risk; and (5) that the defendant consciously chose to disregard the risk. *State v. Nelson*, 224 Or App 398, 402-03, 198 P3d 439 (2008). If the evidence is insufficient to allow a rational factfinder to make those findings, the defendant is entitled to acquittal; otherwise, the matter is properly for the factfinder. *City of Portland v. Miller*, 62 Or App 145, 149, 659 P2d 980 (1983).

Defendant argues that the evidence was legally insufficient to find him guilty of recklessly endangering his daughter. The state disagrees, arguing that the evidence was sufficient, because his daughter was not wearing a bike helmet and because defendant had weapons on his person. On this record, we agree with defendant.

As the state points out, a person's conduct need not result in *actual* harm to another to constitute reckless endangerment. To the contrary, ORS 163.195 "prohibits conduct that is likely to expose another person to harm; it is not limited to conduct that actually exposes another person to harm." *State v. Harbert*, 155 Or App 137, 141, 963 P2d 710, *rev den*, 327 Or 554 (1988). But that point is not in dispute. The issue in this case comes down to whether there was legally sufficient evidence that defendant's conduct created a "substantial risk of serious physical injury" to his daughter and, relatedly, "presented such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act." *Nelson*, 224 Or App at 402-03.

The ways in which a person might recklessly endanger another person are vast and diverse, and existing precedent necessarily touches on only a small subset. Nonetheless,

---

[2] *See* ORS 161.085(1), (3), (4) (defining "conduct" as "an act or omission and its accompanying mental state"; "act" as "a bodily movement"; and "omission" as "a failure to perform an act the performance of which is required by law").

it is useful to consider prior examples of fact scenarios that we have held to be sufficient—or insufficient—to allow a conviction for reckless endangerment. In particular, we consider existing case law involving challenges to the sufficiency of the evidence that a defendant's act or omission created a substantial risk of serious physical injury to another person and/or presented such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act.

We have held evidence to be legally sufficient to allow those findings where a person intentionally fired a random gunshot inside a bedroom occupied by two other people, *State v. Rainwater*, 26 Or App 593, 597, 553 P2d 1085 (1976); where a person shot 15 bullets into the ceiling and front door of his duplex in a residential neighborhood, *Harbert*, 155 Or App at 141; where a person drove while intoxicated with two young passengers in the vehicle, *State v. Mojarro-Sandoval*, 208 Or App 178, 183, 144 P3d 996, *rev den*, 342 Or 117 (2006); where a person allowed a two-year-old child to wander unattended in a commercial and residential neighborhood for six hours, *Nelson*, 224 Or App at 403;[3] where a person used and allowed others to use methamphetamine in his home without checking to ensure that none was left behind, despite knowing that a two-year-old who lived there had a history of finding and eating unattended items, *State v. Walker*, 296 Or App 1, 13, 437 P3d 275 (2019); and where a person drove a stolen tow truck directly at a law enforcement officer, *State v. Chilcote*, 301 Or App 671, 672, 457 P3d 343, *rev den*, 367 Or 115 (2020).

Conversely, we have held that evidence was insufficient to allow the findings where a person allowed a four-year-old child to ride a tricycle, unattended, down the middle

---

[3] We note that, in *Nelson*, we ultimately reversed the reckless-endangerment conviction based on the insufficiency of the evidence for a different finding. *See Nelson*, 224 Or App at 403 ("[W]e agree with the state (and defendant concedes) that allowing a two-and-one-half year old child to wander unattended in a commercial and residential neighborhood for six hours put the child at substantial risk of sustaining serious physical injury. We also agree that doing so is a gross deviation from a reasonable standard of care. The dispositive elements, however, are the fourth and fifth: whether defendant was aware of the risk that K was unattended and whether, if she was, she consciously disregarded that risk.").

of the street for an unknown period of time, *State v. Savage*, 214 Or App 343, 347-48, 164 P3d 1202 (2007); where a person used a slingshot to launch a marble into a vacant bus shelter, *Wakefield*, 292 Or App at 698; and where a person continued to drive for a mile after starting to feel drowsy, *State v. Martsch*, 296 Or App 896, 898, 439 P3d 1034 (2019).

We conclude that this case falls on the "insufficient" side of the line. That is, we agree with defendant that, viewed in the light most favorable to the state, the evidence was legally insufficient to convict defendant of recklessly endangering his daughter. Although defendant's conduct may have been inadvisable, it does not legally rise to the level of criminally reckless conduct.

With respect to defendant's daughter not wearing a helmet—exposing her to the risk of falling and hitting her head—it is a traffic offense, subject to a $25 fine, for a person to operate a bicycle on a highway or on premises open to the public while carrying "on the bicycle" a child under 16 years old who is not wearing protective headgear. ORS 814.486(1)(a), (3). More generally, it is a traffic offense by the parent or legal guardian whenever a child under 16 years of age "operates or rides on a bicycle" on a highway or on premises open to the public without wearing protective headgear. ORS 814.486(1)(b). It is fairly obvious that conduct punishable by a $25 fine is not so inherently dangerous as to universally rise to the level of criminal recklessness. Rather, it will depend on the circumstances—and, of course, we can envision circumstances in which a child being on a bicycle without a helmet (or even with a helmet) could be reckless endangerment.

This is not that case. Defendant was bicycling slowly down a flat sidewalk with a four-year-old child held to his side. Certainly, it was not *impossible* that something might happen that could cause defendant to lose command of the bicycle, triggering a sequence of events that might culminate in defendant's daughter sustaining a "serious physical injury" due to not wearing a helmet. However, we disagree with the state's suggestion that *any* possible risk of serious physical injury, no matter how small, will support a conviction for the crime of reckless endangerment.

Rather, as the statute provides, a person's act or omission must create a *substantial* risk of serious physical injury. ORS 163.195(1); *see also Savage*, 214 Or App at 347 (stating that it is not enough that the "facts and inferences would allow a rational juror to find that there was a risk that harm to [a child] was possible; conviction *** requires proof beyond a reasonable doubt that the risked harm be likely"). Further, the act or omission must present "such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act." *Nelson*, 224 Or App at 402-03; ORS 161.085(9). The evidence regarding defendant's daughter not wearing a helmet in these particular circumstances falls far short of that legal standard.

Having concluded that defendant could not be convicted of reckless endangerment on this record based on his daughter not wearing a bike helmet, we turn to the issue of defendant having weapons on his person. We first address the butterfly knife found in defendant's right pants pocket. The state never argued in the trial court—to the jury or to the court—that the knife had any relevance to the reckless endangerment charge. Nonetheless, on appeal, the state seems to rely on it, mentioning the knife several times in passing, without any explanation or developed argument. The state has not, however, posited any scenario in which the knife could have seriously injured defendant's daughter, given its location. The state had it right at trial. Any possible risk posed to defendant's daughter by the knife in defendant's right pants pocket was, at most, remote, not substantial. Had the trial court relied on the butterfly knife to deny defendant's motion for judgment of acquittal—and there is no reason to believe that it did—it would have been error.

That leaves the issue of defendant carrying a loaded gun, clipped inside his pants on the right front side of his waistband, with a built-in safety so that someone would have to pull the trigger to fire the gun. Practically speaking, defendant having a loaded gun on his person raises the only serious question as to the sufficiency of the evidence for a reckless-endangerment conviction. Ultimately, however, on this record, we conclude that the presence of the gun was

insufficient to bring the evidence over the line to create a jury question. Although the gun was loaded (a prerequisite to it posing any risk here), it was entirely concealed inside defendant's pants, was physically clipped to his waistband on the opposite side of his body, and had a built-in safety. The state has never argued that defendant's daughter was aware of or had access to the gun, nor would this record support such a finding. Rather, the state's theory at trial was that, if defendant lost control of the bicycle, defendant and his daughter could "crash and somehow that trigger gets pulled, [and] that's risk of serious physical injury right there."

Notwithstanding the fact that defendant was pedaling slowly down a flat sidewalk, it was *possible* that he could lose control of the bicycle and crash. Virtually all activities involve some danger of an accident—whether it be bicycling on a sidewalk, walking alongside a road, or walking around one's house with toys on the floor—but carrying a loaded gun while doing something other than standing motionless can constitute reckless endangerment only if a rational factfinder could find that the conduct posed a "substantial" risk of serious physical injury to another person. ORS 163.195(1). Further, it must present "such a substantial and unjustifiable risk of serious physical injury that only a person demonstrating a gross deviation from a reasonable standard of care would so act or omit to act." *Nelson*, 224 Or App at 402-03; ORS 161.085(9).

Here, the state offered no explanation as to how the gun trigger could possibly get pulled in a bicycle accident, resulting in defendant's daughter being shot, let alone how that could be viewed as a "substantial" risk. The state relied solely on the vague notion that, if defendant lost control of the bicycle, it could "crash and somehow that trigger gets pulled." On this record, a rational factfinder could not find that defendant's conduct created a "substantial" risk of his daughter being shot. There is no precedent in our case law for viewing such an attenuated risk—tied to an unlikely series of events such as defendant losing control of the bicycle, crashing, accidentally reaching into his pants, accidentally pulling the trigger of his gun, and striking his daughter with a bullet—as legally sufficient to establish the crime

of recklessly endangering another person. In reaching that conclusion, we emphasize that there was no evidence that the gun could accidentally discharge without pulling the trigger; to the contrary, Slagle testified, and the state specifically acknowledged, that, due to the internal safety, the trigger had to be pulled for the gun to discharge.

Any loaded gun in proximity to any other person poses some risk, and some people might understandably prefer that no child ever be in proximity to a loaded gun. The law does not presume, however, that the mere presence of a loaded gun recklessly endangers all of those in proximity to it. On this record, although one might not favor defendant's decision to carry weapons while bicycling with his daughter, a rational factfinder could not find that defendant's conduct created a "substantial risk" of serious physical injury to his daughter, so as to give rise to criminal liability under ORS 163.195. Accordingly, we reverse defendant's conviction for recklessly endangering another person (Count 3), while affirming his other convictions.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.