Argued and submitted March 23; conviction on Count 2 reversed, otherwise affirmed; supplemental judgment reversed November 30, 2022

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# MICHAEL RICHARD LEWIS,
*Defendant-Appellant.*

## Crook County Circuit Court
18CR55360; A173465

### 522 P3d 12

Defendant appeals from a judgment of conviction for recklessly endangering another person, ORS 163.195 (Count 2), after his three-year-old son was found to have methamphetamine in his system. He assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that the state did not present sufficient evidence to prove that he committed an act, or failed to perform an act, which created a substantial risk of serious physical injury to his son. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal and in finding defendant guilty on the recklessly endangering charge. The record does not contain evidence that would permit a factfinder to reasonably infer the act or omission that defendant engaged in that would connect defendant's possession and unspecified use of methamphetamine to the creation of a substantial and unjustifiable risk that the child would be exposed to methamphetamine while in defendant's care.

Conviction on Count 2 reversed; otherwise affirmed. Supplemental judgment reversed.

Matthew B. Shirtcliff, Judge. (Judgment dated February 7, 2020)

Michael R. McLane, Judge. (Supplemental Judgment dated August 24, 2020)

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Nicholas C. Greenfield, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

MOONEY, P. J.

Conviction on Count 2 reversed; otherwise affirmed. Supplemental judgment reversed.

**MOONEY, P. J.**

Defendant was convicted of recklessly endangering another person, ORS 163.195 (Count 2),[1] after his three-year-old son, R, was found to have methamphetamine in his system.[2] Defendant appeals from the judgment of conviction and a supplemental judgment, assigning error to (1) the trial court's denial of his motion for judgment of acquittal (MJOA) and "finding defendant guilty of Count 2," and (2) the court's imposition of $9,180.20 in restitution for medical expenses. We conclude that the trial court erred in denying defendant's MJOA and in finding him guilty of recklessly endangering another person, and therefore reverse. Accordingly, we also reverse the supplemental judgment, which awarded restitution based on defendant's conviction. Given our disposition of the first assignment of error, it is not necessary for us to address the second assignment of error directed to the restitution award.

"We review the denial of an MJOA for whether a rational factfinder could find, after viewing the evidence in the light most favorable to the state and making reasonable inferences and credibility choices, that the state proved every element of the offense beyond a reasonable doubt." *State v. Davis*, 261 Or App 38, 39, 323 P3d 276 (2014). Reasonable inferences are permissible; mere speculation is not. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Thus, the initial question whether particular circumstantial evidence is legally sufficient to support a particular inference is a legal question for the court to decide. *Id.* We state the facts in accordance with the standard of review.

Defendant and R's mother, Morse, had an informal custody arrangement with respect to R and they alternated parenting time with him by mutual agreement. Defendant's housing situation was in flux. He occasionally stayed with

---

[1] ORS 163.195(1) provides:

"A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

[2] Defendant was also charged with one count of endangering the welfare of a minor, ORS 163.575, but he was acquitted on that count.

his former girlfriend, Smith, just "down the street" from Morse, at his mother's place, or in his truck. During the mid- to late morning hours of August 15, defendant "wanted time with [R], so he came and got [R]" from Morse's house. According to Morse, defendant seemed "grouchy" and "agitated" when he picked R up that morning. After watching defendant "walk down to [Smith's apartment] from [Morse's] house with the car seat and [R]," Morse called Smith to see if she would "help [defendant] with [R]." Smith said that she would do so. Morse later acknowledged that defendant might have looked like he had been using methamphetamine.

Over the course of that day, Smith took R and her children to the river to swim for a while and later to a barbeque at a friend's house. Defendant joined Smith and the children at the river and, according to Smith, was acting fine, "just hanging out." Defendant later told police and the Department of Human Services (DHS) investigators that he sat in his truck rather than go swimming, explaining that it "had been a weird day for him." When they left the river, defendant and R drove separately in defendant's truck. Defendant described that 30 to 45 minute ride:

> "I had the boy, we went swimming, then me and the boy went for a drive. I was trying to get him to like take a nap, I think. And he was strapped in the seat the whole time. There is no way he could have gotten around the truck. And then he wouldn't go to sleep, so I went ahead and drove back to [Smith's apartment]."

Defendant then left R with Smith, who took R with her to a barbeque that lasted between two and three hours. Defendant later dropped by Morse's house and they had an argument. Smith returned R to Morse's care after the barbeque, arriving just as defendant was leaving, apparently upset with Morse following their argument. Within five or 10 minutes of R being returned to Morse's care, Morse noticed that R was "jerky and twitchy and he couldn't like stop moving and twitching, and it was—it was bad." She took R to the hospital where a drug screen revealed that he had methamphetamine in his system.

Defendant does not dispute that he used methamphetamine on August 15. Defendant also does not seriously dispute that there was methamphetamine in his truck that day. He stated that he usually kept methamphetamine "in this little lockbox" in his truck, but that there was "no way [R] could have got around in the truck. So if there was anything in the truck, there's no way he could have got to it. It's not like I let him roam around in there." Defendant asserted that the reason no lockbox was found was that he threw it out the window of his truck after his argument with Morse, described above.

No one was able to find or contact defendant for two days after he left Morse's house. He ultimately responded to a text message from a DHS caseworker on August 17 and agreed to meet for an interview with police and DHS. The interview ended in his arrest for charges that led to the conviction at issue. He told the investigators that he had gone camping because he was angry at Morse because of a dispute over money and "he was *** sick of everybody." Defendant acknowledged having received text messages about R's medical condition while he was camping, but he said that he did not believe them at first and that he was having difficulties with a broken phone. Morse recalled that in a conversation she later had with defendant, he offered the possibility that R's exposure to methamphetamine "could have happened" while R was with Smith or that "it could have happened in the back of [defendant's] truck."

In support of his MJOA, defendant argued that there was "no nexus between what it is that he is alleged to have done and the child consuming methamphetamine." He argued further that the evidence was not sufficient to support the state's contention that R was exposed to methamphetamine while under defendant's care. Defendant argued that the state had not "presented any evidence to support any act that [defendant] actually committed that created a risk of serious physical injury to [R]." The state, for its part, responded to the MJOA by focusing on the period of time that R was in the truck with Defendant as they left the river until defendant dropped the child off with Smith. Specifically, the state argued:

> "I guess I will briefly mention Counsel's argument with
> regards to Count 2, the Reckless Endangering. Again, we
> don't have a case where we're saying it's just neglect and
> maybe there's a—there is a sort of a theoretical danger. We
> know what [R] experienced. We know what happened in
> this case, he was exposed to these drugs. He was with this
> Defendant."

The trial court denied the motion, explaining that evidence
of defendant's "meth use" on August 15th was itself "suffi-
cient evidence to go forward on the Reckless Endangerment
charge." Defendant rested, and after closing arguments,
the trial court found him guilty of recklessly endangering
another person.

There are countless ways in which a person might
recklessly endanger another person. *State v. Harris*, 311 Or
App 27, 32, 487 P3d 421 (2021). But, to support a conviction
for the crime of recklessly endangering another person, the
state must prove that:

1.  "defendant performed an act, or omitted to perform an
act as required by law";

2.  "the act or omission created a substantial risk of seri-
ous physical injury to another person";

3.  "the act or omission presented such a substantial and
unjustifiable risk of serious physical injury that only a
person demonstrating a gross deviation from a reasonable
standard of care would so act or omit to act";

4.  "defendant was aware of the risk"; and

5.  "defendant consciously chose to disregard the risk."

*State v. Nelson*, 224 Or App 398, 402-03, 198 P3d 439 (2008);
*see also Harris*, 311 Or App at 31-32 (same). "If the evidence
is insufficient to allow a rational factfinder to make those
findings, the defendant is entitled to acquittal; otherwise,
the matter is properly for the factfinder." *Id.* at 32 (citing
*City of Portland v. Miller*, 62 Or App 145, 149, 659 P2d 980
(1983)).

After canvassing our reckless endangering case law in *Harris*,[3] we concluded that the presence of a loaded gun with a built-in safety that was concealed inside a father's pants and clipped to his waistband, while bicycling on the sidewalk and holding his four-year-old daughter to his side, was insufficient for a reckless endangering conviction. We explained that the state "offered no explanation as to how the gun trigger could possibly get pulled in a bicycle accident, resulting in defendant's daughter being shot, let alone how that could be viewed as a 'substantial' risk." *Id.* at 36.

We have reversed judgments of conviction for recklessly endangering another person where the facts in the record were too sparse to allow for reasonable inferences of culpable conduct on the part of the defendant. For example, in *State v. Savage*, the defendant was convicted of recklessly endangering another person for allowing a four-year-old child to ride a tricycle, unattended, down the middle of the street for an unknown period of time. 214 Or App 343, 346,

---

[3] In *Harris* we observed:

"We have held evidence to be legally sufficient to allow those findings where a person intentionally fired a random gunshot inside a bedroom occupied by two other people, *State v. Rainwater*, 26 Or App 593, 597, 553 P2d 1085 (1976); where a person shot 15 bullets into the ceiling and front door of his duplex in a residential neighborhood, [*State v.*] *Harbert*, 155 Or App [137,] 141, [963 P2d 710 (1998), *rev den*, 327 Or 554 (1998)]; where a person drove while intoxicated with two young passengers in the vehicle, *State v. Mojarro-Sandoval*, 208 Or App 178, 183, 144 P3d 996, *rev den*, 342 Or 117 (2006); where a person allowed a two-year-old child to wander unattended in a commercial and residential neighborhood for six hours, *Nelson*, 224 Or App at 403 ***, where a person used and allowed others to use methamphetamine in his home without checking to ensure that none was left behind, despite knowing that a two-year-old who lived there had a history of finding and eating unattended items, *State v. Walker*, 296 Or App 1, 13, 437 P3d 275 (2019); and where a person drove a stolen tow truck directly at a law enforcement officer, *State v. Chilcote*, 301 Or App 671, 672, 457 P3d 343, *rev den*, 367 Or 115 (2020).

"Conversely, we have held that evidence was insufficient to allow the findings where a person allowed a four-year-old child to ride a tricycle, unattended, down the middle of the street for an unknown period of time, *State v. Savage*, 214 Or App 343, 347-48, 164 P3d 1202 (2007); where a person used a slingshot to launch a marble into a vacant bus shelter, [*State v.*] *Wakefield*, 292 Or App [694,] 698, [425 P3d 491 (2018)]; and where a person continued to drive for a mile after starting to feel drowsy, *State v. Martsch*, 296 Or App 896, 898, 439 P3d 1034 (2019)."

311 Or App at 33-34.

164 P3d 1202 (2007). In reversing the defendant's conviction, we explained:

> "It is worth noting what the evidence did not directly establish: There is no evidence, nor can any be inferred, regarding how much time elapsed between when the child left the house and when the passerby saw him in the street, how long defendant had been asleep when she came to the door, whether she had been asleep when the boy left, whether the boy had ever before left the house unsupervised, what precautions defendant had taken to prevent him from doing so, or how the boy found the tricycle."

*Id.* at 345.

This case is like *Savage* because there are significant gaps in the evidence concerning what defendant did or did not do during the time period in which the state asserts that he engaged in conduct that created a substantial risk that R would be exposed to methamphetamine. The evidence does not support a conclusion either directly, or indirectly through reasonable inferences, about when or how R was exposed to methamphetamine. And while proof of actual exposure to the risk is not required for a recklessly endangering conviction, the drug screen in this case establishes that R was, in fact, exposed to methamphetamine. The lack of evidence about when and how R was exposed to methamphetamine, and the lack of evidence about when R first started exhibiting symptoms of exposure bears on the question whether defendant performed or failed to perform an act that created a substantial risk of serious physical injury to R.

Although the chronology of the day's events is imprecise, the focus is on the time period during which defendant transported R from the river back to Smith's apartment in his truck. And although it is not impossible that R was exposed in the truck, there is no affirmative evidence that he was. It is also impossible to rule out exposure at some other point during the day, when he was in Smith's care and not defendant's. Under this constellation of facts, a finding that the exposure happened in the truck is impermissibly speculative. There is no evidence other than speculation that R

was not fastened into his car seat when in the truck, or that any methamphetamine was accessible to R, when R was in the truck on August 15. To be sure, defendant subsequently speculated with Morse that R could have been exposed to methamphetamine in the back of his truck or when R was under Smith's care. However, the two to three hours that passed between the time that R left defendant's care and the time that R apparently first exhibited symptoms of methamphetamine exposure suggests that the exposure happened while R was in Smith's care, and the state offered no evidence from which the jury reasonably could find otherwise. The record before us, like the parents' conversation, supports defendant's conviction for recklessly endangering R only if we—or the parents—speculate or guess that the exposure—and, thus, the risk—occurred while R was in the truck.

If there was evidence in this record to allow for a reasonable inference about defendant's level of impairment while R was in his care on August 15, this might be a different case. For example, in *State v. Mojarro-Sandoval*, 208 Or App 178, 183, 144 P3d 996, *rev den*, 342 Or 117 (2006), we affirmed the defendant's reckless endangerment conviction because there was evidence that the defendant was intoxicated (failed field sobriety tests) when he drove with two young passengers in the vehicle. We explained:

> "As [Officer] Neville testified, defendant was too impaired to drive at all, much less to drive with passengers. Defendant may be correct that evidence that his impaired state actually resulted in erratic driving would be even more persuasive. But, even in the absence of evidence of such impaired driving, the fact remains no less established that his passengers were at *risk* of harm as a result of his intoxication."

*Id.* (emphasis in original). Such evidence is lacking here. While there was testimony that defendant was "grouchy," and "agitated," and that he may have appeared to have been using methamphetamine on August 15, the testimony did not speak to defendant's level of impairment while he was caring for R and it did not support a reasonable inference that defendant's ability to parent R was impaired while he was in charge of R that day.

The state and defendant both rely on *State v. Walker*, 296 Or App 1, 13, 437 P3d 275 (2019), a case where we upheld the defendant's reckless endangerment conviction in relation to his two-year-old child's ingestion of methamphetamine while in the home where the defendant was staying. There the record included evidence that the defendant's child was very active; that the defendant and his friend used methamphetamine in areas of the home that his child could access and where they may have dropped some methamphetamine; and that the defendant did not clean the areas where methamphetamine was used despite the acknowledged risk that some may have been on the floor. *Id.* at 46. As we explained:

> "This is not a case in which the only evidence is that a dangerous substance was in a home and a child was harmed by ingesting that substance. Rather, in addition to those facts, the record also supports an inference that defendant knew that the manner in which methamphetamine had been used inside the home posed a substantial risk of harm to J, a toddler whom defendant knew to be active and prone to eating items that she found on the floor and in the garbage."

*Id.* at 12.

The state argues that the facts here are even more compelling than in *Walker*. But when we read this record in the light most favorable to the state, we do not read it to contain any evidence about where or how the methamphetamine was stored beyond defendant's statement that he generally kept it in a lockbox somewhere in his truck. Assuming that the trier of fact accepted defendant's contention that it was stored in a lockbox, there was no evidence allowing a finding that it was accessible to R—that is, no evidence to suggest that R could unfasten himself from his car seat, or that he could get to the lockbox once unfastened, or that he could open the lockbox and get to its contents even if he could locate the box and move to its location. On the other hand, if the trier of fact did not accept defendant's contention that the methamphetamine was stored in a lockbox, the record is still devoid of evidence of how it was accessible to R while he was in the truck. Finally, evidence that defendant appeared to be impaired on August 15 is vague at best, but as we have already discussed, the record lacks evidence of the level of defendant's impairment while he was caring

for R, and it lacks evidence of whether or how defendant's impairment impacted his ability to supervise R during that period.

It is clear on this record that a dangerous substance, methamphetamine, was present in a lockbox somewhere in defendant's truck, and that defendant used methamphetamine on August 15, 2018. It would be difficult to disagree with those who would counsel parents of young children to avoid any possession, or use, of methamphetamine on a day when they will spend time with their children. And it would not be surprising to learn that such advice may come from concern about the risk that such use and possession creates for those children.

But the standard by which defendant's conduct is viewed is not that he might have created some risk of harm or even that a risk that might have been created by defendant materialized, and that an injury was ultimately sustained. The law does not presume that the act of possessing, or using, a controlled substance by itself recklessly endangers those in close proximity to the substance or to the person who used the substance, any more than "the mere presence of a loaded gun recklessly endangers all of those in proximity to it." *Harris*, 311 Or App at 37. As we explained in *Harris*:

> "Any loaded gun in proximity to any other person poses some risk, and some people might understandably prefer that no child ever be in proximity to a loaded gun. The law does not presume, however, that the mere presence of a loaded gun recklessly endangers all of those in proximity to it. On this record, although one might not favor defendant's decision to carry weapons while bicycling with his daughter, a rational factfinder could not find that defendant's conduct created a 'substantial risk' of serious physical injury to his daughter, so as to give rise to criminal liability under ORS 163.195."

*Id*.

This record does not contain evidence that would permit a factfinder to reasonably infer the act or omission that defendant engaged in that would connect defendant's possession and unspecified use of methamphetamine on

August 15, 2018, to the creation of a substantial and unjustifiable risk that R would be exposed to methamphetamine while in his father's truck. Certainly the factfinder is not bound to accept defendant's explanation of the precautions he took while R was under his care. And it need not accept Smith's testimony that defendant was "fine" when he took R for a drive or that R was behaving normally for two to three hours after defendant dropped him off with her through the time that she, in turn, dropped R off with his mother. But even if the factfinder does not accept the testimony of those witnesses as credible, the remaining evidence in the record is not sufficient to establish without speculation what defendant did to create the requisite risk. *Bivins*, 191 Or App at 468. The trial court, thus, erred in denying defendant's MJOA.

Conviction on Count 2 reversed; otherwise affirmed. Supplemental judgment reversed.